# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-1465

_____

The Prudential Insurance Co. of America; Prudential Health Care Plan, Inc., d/b/a Prudential Health Care Plan of Arkansas,

        Plaintiffs/Appellees,

HMO Partners, Inc.,

        Plaintiff/Appellant,

Arkansas AFL-CIO; Tyson Foods, Inc.; United Paperworkers International Union, AFL-CIO, CLC,

        Plaintiffs,

    v.

National Park Medical Center, Inc.; Y.Y. King, M.D.,

        Defendants/Appellees,

Appeals from the United States District Court for the Eastern District of Arkansas.

Bryan W. Russell, D.C.; George A. Haas, O.D.; Bryant Ashley, Jr., O.D.,

    Defendants,

The State of Arkansas,

    Intervenor Below/
    Appellee,

American Association of Health Plans, Inc.,

    Movant Below.

   _____

    No. 04-1644
   _____

The Prudential Insurance Co. of America; Prudential Health Care Plan, d/b/a Prudential Health Care Plan of Arkansas, Inc.,

    Plaintiffs/Appellees,

HMO Partners, Inc.; Arkansas AFL-CIO,

    Plaintiffs,

Tyson Foods, Inc.,

    Plaintiff/Appellant,

United Paperworkers International Union, AFL-CIO, CLC,

    Plaintiff,

  v.

National Park Medical Center, Inc.; Y.Y. King, M.D.,

    Defendants/Appellees,

Bryan W. Russell, D.C.; George A. Haas, O.D.; Bryant Ashley, Jr., O.D.,

    Defendants,

State of Arkansas,

    Intervenor Below/
    Appellee,

American Association of Health Plans, Inc.,

    Movant Below.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

_____

Submitted:  November 17, 2004
Filed:  June 29, 2005

_____

Before RILEY, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

HMO Partners, Inc. ("HMOP") and Tyson Foods, Inc. ("Tyson") appeal the district court's order dissolving the permanent injunction it imposed following this Court's decision in *Prudential Insurance Co. of America  v. National Park Medical Center, Inc.*, 154 F.3d 812 (8th Cir. 1998) ("*Prudential I*").  For the reasons stated below, we affirm in part, reverse in part, and remand to the district court to enter judgment consistent with this opinion.

## I.    BACKGROUND

HMOP is a health maintenance organization ("HMO") that operates under the insurance laws of the State of Arkansas and offers insured employee health benefit plans to employers.  Tyson sponsors a self-funded, or self-insured, health benefit plan (the "Tyson plan") for its employees in which benefits are paid out of Tyson's general assets.  The insured employee benefit plans offered by HMOP and Tyson's self-funded plan are governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 – 1461.[1]

The Tyson plan and the plans offered by HMOP feature closed "provider networks" to control both the cost and quality of health care services.  The networks are composed of health care providers, including doctors and hospitals, that agree to various contractual requirements in exchange for membership within the network. The terms and conditions for inclusion in a plan's provider network typically include price controls.  Providers agree to those price controls because they anticipate increased business from plan participants who are reimbursed only for services

---

[1]Employee benefit plans can be either ERISA plans or non-ERISA plans. *See* 29 U.S.C. §§ 1003(a) and 1003(b).  No non-ERISA plans are parties in this case.

performed by in-network providers or who receive a greater benefit by going to in-network providers as opposed to out-of-network providers.

HMOP creates its own provider networks. In contrast, Tyson maintains various agreements with insurance companies under which the insurance companies may agree not only to perform third-party administrative and claims processing services for the Tyson plan but also to provide the plan access to various provider networks in the geographic areas in which Tyson's employees are located.

The Arkansas Patient Protection Act of 1995 (the "Arkansas PPA"), Ark. Code Ann. §§ 23-99-201 – 23-99-209, was passed to ensure "that patients . . . be given the opportunity to see the health care provider of their choice." Ark. Code Ann. § 23-99-202. To effectuate this goal, the Arkansas PPA, commonly referred to as an "any willing provider" ("AWP") law, provides that: "A health care insurer shall not, directly or indirectly . . . [p]rohibit or limit a health care provider that is . . . willing to accept the health benefit plan's operating terms and conditions, schedule of fees, covered expenses, and utilization regulations and quality standards, from the opportunity to participate in that plan." Ark. Code Ann. § 23-99-204. Typical of AWP laws, the Arkansas PPA requires health care insurers to admit qualified health care providers into the insurer's provider networks if they are willing to meet the terms and conditions of participation.

After Arkansas passed the Arkansas PPA, various doctors and hospitals sought admission into otherwise exclusive provider networks by expressing a willingness to accept the terms and conditions of participation. HMOP and Tyson sought a declaratory judgment that the Arkansas PPA was preempted by ERISA § 514, 29 U.S.C. § 1144, and a permanent injunction against the enforcement of the Arkansas

PPA by parties seeking admission into their exclusive provider networks.[2]  The district court granted judgment in favor of both HMOP and Tyson and later amended its order to hold that the Arkansas PPA was preempted by ERISA only insofar at it relates to ERISA plans.  *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr.*, 964 F. Supp. 1285 (E.D. Ark. 1997).

In *Prudential I*, this Court reversed the district court's amendment of its judgment and held that the Arkansas PPA was preempted by ERISA "in its entirety," not just as it relates to ERISA plans.  154 F.3d at 831-32.  We held that HMOP and Tyson were both entitled to a permanent injunction against enforcement of the Arkansas PPA in its entirety and remanded the case to the district court to enter an injunction (the "*Prudential I* injunction") in accordance with our decision.  *Id.* at 832.  The defendants did not seek a writ of certiorari.

The present appeal began in light of the Supreme Court's opinion in *Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329 (2003), which held that ERISA did not preempt two Kentucky AWP statutes.  Arguing that *Miller* changed the applicable law, National Park Medical Center, Inc. and Y.Y. King, M.D, which were defendants in the original suit for injunction, and the State of Arkansas, which participated in the original suit as an intervenor (collectively "the movants"), filed a Motion to Recall Mandate and Lift Permanent Injunction ("Motion to Recall Mandate") with this Court.  We summarily denied that motion, stating without further explanation that, "The motion to recall the mandate and lift permanent injunction filed by Appellants

---

[2]Many of the original parties in this case did not participate in this appeal.  This includes Aetna, Inc. ("Aetna"), which acquired Prudential Insurance Company of America and Prudential Health Plan, Inc. (collectively "Prudential") after this Court issued its mandate in *Prudential I*.  Aetna, the successor to Prudential's interest in *Prudential I*, takes no position on the resolution of this appeal and, upon leave from this Court, neither filed briefs nor appeared at oral argument.

National Park Medical Center and Y.Y. King, M.D., and Intervenor State of Arkansas has been considered by this Court and is denied."

The movants then filed a Joint Motion to Dissolve the Permanent Injunction ("Joint Motion") pursuant to Fed. R. Civ. P. 60(b)(5) with the United States District Court for the Eastern District of Arkansas. The district court held that "the significant shift in the law as a result of the *Miller* decision meets the requirement of an extraordinary circumstance" for the purposes of Rule 60(b)(5) and dissolved the injunction barring the enforcement of the Arkansas PPA. *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr.*, No. 95-514, slip op. at 5 (E.D. Ark. Feb. 12, 2004).

HMOP and Tyson appeal, arguing on several grounds that we should reverse the district court and direct it to reinstate the injunction against the enforcement of the Arkansas PPA by the excluded health care providers and the State of Arkansas, the movants in this case.

## II.   DISCUSSION

### A.   District court's authority to rule on the movants' Joint Motion under Rule 60(b)(5)

The movants filed their Joint Motion under Rule 60(b)(5). This Court reviews a district court's ruling on a Rule 60(b)(5) motion for abuse of discretion. *Parton v. White*, 203 F.3d 552, 555-56 (8th Cir. 2000). Both HMOP and Tyson argue that because this case involves only pure issues of law, the standard of review should be de novo. Nothing turns on this argument because a "'district court by definition abuses its discretion when it makes an error of law.'" *Computrol, Inc. v. Newtrend, L.P.*, 203 F.3d 1064, 1070 (8th Cir. 2000) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

Rule 60(b)(5) states that, "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . [if] it is no longer equitable that the judgment should have prospective application." Fed. R. Civ. P. 60(b)(5). "The district court retains authority under Rule 60(b)(5) to modify an injunction when changed circumstances have caused it to be unjust." *Keith v. Mullins*, 162 F.3d 539, 540-41 (8th Cir. 1998). "'Relief under Rule 60(b) is an extraordinary remedy'" and will be justified only under "exceptional circumstances." *Watkins v. Lundell*, 169 F.3d 540, 544 (8th Cir. 1999) (quoting *Nucor Corp. v. Nebraska Pub. Power Dist.*, 999 F.2d 372, 374 (8th Cir. 1993)). When prospective relief is at issue, a change in decisional law provides sufficient justification for Rule 60(b)(5) relief. *See Ass'n for Retarded Citizens of N.D. v. Sinner*, 942 F.2d 1235, 1240 (8th Cir. 1991).

HMOP and Tyson argue on a number of grounds that the district court was precluded from entertaining the movants' Joint Motion. Although HMOP and Tyson present a number of distinct arguments, they generally contend that the district court should not have considered the motion because this Court previously denied a motion on the same ground seeking similar relief. We disagree.

First, HMOP's and Tyson's various arguments based on res judicata and the law of the case doctrine assume that this Court's summary denial of the movants' Motion to Recall Mandate was a decision on the merits rather than on procedural or prudential grounds. HMOP and Tyson, however, ignore that this Court's summary order refusing to recall its mandate was issued in a case with a complex procedural history involving complex legal issues and was without any substantive analysis or comment on the merits of the motion. Under these circumstances, the district court could have reasonably inferred that our denial was not on the merits, but rather an invitation for the parties to present their claims before the district court first.[3] *Cf.*

---

[3]Understandably, the district court questioned its own authority to decide the matter. *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr.*, No. 95-514, at 9 (E.D.

*Moore v. Jackson*, 70 Fed. Appx. 401, 403 (8th Cir. 2003) (unpublished per curiam) (holding that a district court's summary denial of a motion gave this Court no indication of its legal conclusions and remanding the case for reconsideration). In addition, the district court recognized that the Supreme Court's decision in *Miller* changed the governing law in this case, as we demonstrate below. For these reasons and in these limited circumstances, we hold that the district court did not err by reaching the merits of the Joint Motion. Therefore, we reject HMOP's and Tyson's arguments that our summary denial of the movants' Motion to Recall Mandate was the law of the case or had res judicata effect.

Similarly, we reject HMOP's argument that under *Kansas Public Employees Retirement System v. Reimer & Koger Associates, Inc.*, 194 F.3d 922, 925 (8th Cir. 1999), this Court should defer to a previous denial of a motion to recall the mandate where the movants advanced the same arguments in both courts. In that case, we held only that this Court must consider a prior denial. In this case, we have considered our prior denial of the movants' Motion to Recall Mandate, but we agree with the district court that the circumstances warrant reaching the merits of the movants' current motion.

HMOP and Tyson also argue that the district court should have denied the movants' Rule 60(b)(5) motion because there was no change in this Court's binding precedent. *See Agostini v. Felton,* 521 U.S. 203, 238 (1997) (holding that a Rule 60(b)(5) motion must "be denied unless and until this Court reinterpreted the binding precedent"); *Okruhlik v. Univ. of Ark.*, 255 F.3d 615, 622 (8th Cir. 2001) (holding that district courts must observe the precedents of this Court until they are overruled by this Court sitting en banc). First, this argument fails because we believe that the

_____

Ark. Feb. 12, 2004) ("With some reservations that the Eighth Circuit had made a final pronouncement on this issue against the movants even without specific prohibition, this Court will consider the merits of modifying the relief it granted earlier.").

*Miller* Court did overrule our binding precedent. Second, even ignoring the effect of *Miller*, the argument also fails because the district court did not overrule our precedent from *Prudential I*. Rather, the district court only modified its own prior judgment by dissolving the injunction. *See Standard Oil Co. of Calif. v. United States*, 429 U.S. 17, 18 (1976) (holding that where later review makes doing so appropriate, a district court may grant relief from permanent injunctions without appellate leave). Because the Joint Motion involved only prospective relief, the district court did not alter binding precedent, and it had authority to grant the motion.

HMOP contends that the movants' failure to seek a timely writ of certiorari is a sufficient ground for reversing the district court's grant of a Rule 60(b) motion under *In re SDDS, Inc.*, 225 F.3d 970, 972 (8th Cir. 2000) (holding that failure to file a writ of certiorari was a sufficient ground for affirming the district court's denial of a Rule 60(b)(4) motion). In that case, however, there was no change of law that came after the movants' original decision not to seek a writ of certiorari. In this case, not only was there a substantial subsequent change in law but also the movants' original decision not to file a writ of certiorari was reasonable because the Supreme Court had recently declined to consider similar issues in two cases. *See Tex. Pharm. Ass'n v. Prudential Ins. Co. of Am.*, 105 F.3d 1035 (5th Cir. 1997), *corrected by* No. 95-50807 (5th Cir. Feb. 14, 1997), *cert. denied*, 522 U.S. 820 (1997); *CIGNA Healthplan of La., Inc. v. Louisiana*, 82 F.3d 642 (5th Cir. 1996), *cert. denied*, 519 U.S. 964 (1996). This reasonably perceived futility of seeking a writ of certiorari does not foreclose the district court from granting the movants' subsequent Rule 60(b)(5) motion where, as here, a subsequent Supreme Court decision clearly undermines the propriety of the ongoing injunctive relief.

Lastly, Tyson argues that judicial estoppel barred the district court from deciding this case because the movants argued in support of their Motion to Recall Mandate that only this Court could correct its *Prudential I* opinion. *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) ("The principle of judicial estoppel 'bars

a party from taking inconsistent positions in the same litigation.'") (quoting *Morris v. California*, 966 F.2d 448, 452 (9th Cir. 1991)). This Court has not articulated clearly the elements of judicial estoppel but has held that judicial estoppel applies only when a party takes a position that is "clearly inconsistent with its earlier position." *Hossaini v. W. Mo. Med. Ctr.*, 140 F.3d 1140, 1143 (8th Cir. 1998). For Tyson's judicial estoppel argument to succeed, we must be convinced that the movants argued to this Court not only that this Court alone could correct its prior opinion but also that this Court alone could dissolve an injunction imposed at its direction. *See Leonard v. Southwestern Bell Corp. Disability Income Plan*, 341 F.3d 696, 702 (8th Cir. 2003). After a careful review of the record, we are not convinced that the movants' claim that only this Court could correct its opinion is clearly inconsistent with asking the district court to dissolve an injunction in light of a change of law by the Supreme Court. Thus, we reject Tyson's judicial estoppel argument.

For these reasons, we hold that the district court had the authority to rule on the movants' Joint Motion.

**B.    Implied Repeal**

Before reaching the merits of the movants' Joint Motion, we also must address HMOP's contention that Arkansas repealed the Arkansas PPA by implication when it passed a point-of-service ("POS") statute, the Freedom of Choice Among Health Benefit Plans Act of 1999 (the "Freedom of Choice Act"), Ark. Code Ann. §§ 23-86-401 – 23-86-406.

The Freedom of Choice Act requires an HMO, such as HMOP, to offer covered persons a plan option that makes the services of any provider available to them but allows the plan to reimburse participants at a statutorily limited lower rate for services received from out-of-network providers. Ark. Code Ann. § 23-86-404. Like the

-11-

Arkansas PPA, the Freedom of Choice Act attempts to expand the number of providers that health plan participants can utilize and still receive benefits under the plan.

Sharing the same general purpose, however, is insufficient for the implied repeal of a statute under Arkansas law. Under Arkansas law, implied repeals are strongly disfavored, and a court "will not find a repeal by implication if there is any way to interpret the statutes harmoniously." *Neeve v. City of Caddo Valley*, 91 S.W.3d 71, 74 (Ark. 2002). A court can find an implied repeal only if the two statutes are in "irreconcilable conflict" or "the Legislature takes up the whole subject anew and covers the entire ground of the subject matter of a former statute." *Uilkie v. State*, 827 S.W.2d 131, 133-34 (Ark. 1992) (quotation omitted).

There is no inherent inconsistency between AWP and POS laws.[4] Thus, to demonstrate an "irreconcilable conflict" between the Arkansas PPA and the Freedom of Choice Act, HMOP must show that these particular acts are in irreconcilable conflict. We, however, find nothing in the plain language of the statutes to indicate that the Arkansas PPA and the Freedom of Choice Act are in irreconcilable conflict. Under Arkansas law, "statutes relating to the same subject are said to be *in pari materia* and should be read in a harmonious manner, if possible." *R.N. v. J.M.*, 61 S.W.3d 149, 154 (Ark. 2001). Nothing in the plain language of either act indicates that they cannot stand together. *Routh Wrecker Serv., Inc. v. Wins*, 847 S.W.2d 707, 709 (Ark. 1993) (holding that statutes that can stand together are not in irreconcilable conflict).[5]

---

[4]At least two other states have both AWP and POS laws. *See* Ga. Code Ann. §§ 33-30-25 (AWP) and 33-21-29 (POS); Va. Code Ann §§ 38.2-3407(B) (AWP) and 38.2-3407(D) (POS).

[5]The movants further attempt to support their argument that the Arkansas PPA was not repealed by implication by noting that the Arkansas General Assembly

Moreover, HMOP provides no evidence that the Freedom of Choice Act covers the entire subject matter of the Arkansas PPA. In fact, the Arkansas PPA applies much more broadly than the Freedom of Choice Act. The plain language of the Freedom of Choice Act applies strictly to HMOs, which are only one among many types of commercially available health insurance products in Arkansas. *See* Ark. Code Ann. § 23-86-404 (applying the statute only to HMOs). In contrast, the Arkansas PPA applies to many types of health care insurance. *See* Ark. Code Ann. § 23-99-203(f) (defining "health care insurer"). The limited scope of the Freedom of Choice Act demonstrates that it does not cover the entire subject matter covered by the Arkansas PPA.

Consequently, we reject HMOP's assertion that the Freedom of Choice Act repealed the Arkansas PPA by implication.

## C.     ERISA Preemption

ERISA "is a comprehensive statute that sets certain uniform standards and requirements for employee benefit plans." *Minn. Ch. of Associated Builders & Contractors, Inc. v. Minn. Dep't of Pub. Safety*, 267 F.3d 807, 810 (8th Cir. 2001) (quotations omitted). Congress enacted ERISA to regulate comprehensively certain employee benefit plans and "to protect the interests of participants in these plans by establishing standards of conduct, responsibility, and obligations for fiduciaries." *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 628 (8th Cir. 2001); *see* 29 U.S.C. § 1001. "'To meet the goals of a comprehensive and pervasive Federal

---

removed a provision explicitly repealing the Arkansas PPA from the Freedom of Choice Act before that statute was passed. Under Arkansas law, however, a court can employ legislative history only if the statute is not clear and unambiguous. *See*, *e.g.*, *Ark. Gas Consumers, Inc. v. Ark. Pub. Service Comm'n*, 118 S.W.3d 109, 116 (Ark. 2003). Because we find the plain language of each statute to be clear, we see no need to rely on legislative history in this case.

interest and the interests of uniformity with respect to interstate plans, Congress included an express preemption clause in ERISA for the displacement of State action in the field of private employee benefit programs.'" *Minn. Ch. of Associated Builders & Contractors*, 267 F.3d at 810-11 (quoting *Wilson v. Zoellner*, 114 F.3d 713, 715-16 (8th Cir. 1997) (internal citations and quotations omitted)).

There are two types of preemption under ERISA: "complete preemption" under ERISA § 502, 29 U.S.C. § 1132, and "express preemption" under ERISA § 514, 29 U.S.C. § 1144. Complete preemption occurs whenever Congress "so completely [preempts] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). "Claims arising under the civil enforcement provision of Section 502(a) of ERISA, 29 U.S.C. § 1132(a), including a claim to recover benefits or enforce rights under the terms of an ERISA plan, implicate one such area of complete preemption." *Neumann v. AT&T Communications, Inc.*, 376 F.3d 773, 779 (8th Cir. 2004). Because of complete preemption, any claim filed by a plan participant for the same relief provided under ERISA's civil enforcement provision, even a claim purportedly raising only a state-law cause of action, arises under federal law and is removable to federal court. *Id*. at 779-80; *see also Fink v. Dakotacare*, 324 F.3d 685, 688-89 (8th Cir. 2003).

In contrast, ERISA's express preemption clause preempts any state law that "relate[s] to any employee benefit plan." 29 U.S.C. § 1144(a). Although express preemption does not allow for automatic removal to federal court, it does provide an affirmative defense against claims not completely preempted under ERISA § 502. *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 275 n.34 (5th Cir. 2004); *cf. Magee v. Exxon Corp.*, 135 F.3d 599, 601 (8th Cir. 1998).

Both our decision in *Prudential I* and the Supreme Court's decision in *Miller* only considered whether the respective AWP laws were preempted under ERISA's

express preemption clause. For that reason, we begin our analysis of ERISA preemption by determining whether the *Miller* decision compels us to overturn our *Prudential I* holding that ERISA § 514 expressly preempts the Arkansas PPA in its entirety. Pursuant to our analysis below, we hold that *Miller* mandates that we affirm the district court's dissolution of the *Prudential I* injunction with regard to insured ERISA plans and non-ERISA plans. *Miller*, however, did not involve the issue of whether the Kentucky AWP statutes were preempted with regard to self-funded ERISA plans such as the Tyson plan. With regard to self-funded ERISA plans, we reverse the district court's dissolution of the *Prudential I* injunction and remand to the district court to enter judgment consistent with this opinion. Finally, our holding that the Arkansas PPA can be enforced against insured ERISA plans compels us to consider, as a matter of first impression, whether ERISA's civil enforcement provision completely preempts the civil penalties provision of the Arkansas PPA, Ark. Code Ann. § 23-99-207. Following the Supreme Court's recent decision in *Aetna Health Inc. v. Davila*, 124 S. Ct. 2488 (2004), we hold that ERISA completely preempts the civil penalties provision of the Arkansas PPA as applied to suits that could have been brought under ERISA § 502, and we remand to the district court to enter judgment consistent with this opinion.

### 1. Express preemption under ERISA § 514

ERISA's "express preemption" clause states that, "[e]xcept as provided [in the act], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). ERISA's broad preemption of state law is limited by the "savings clause," under which ERISA shall not "be construed to exempt or relieve any person from any law of any State which regulates insurance . . . ." 29 U.S.C. § 1144(b)(2)(A). ERISA's exemption from preemption for "any law . . . which regulates insurance," however, has one express exception.

The "deemer clause" provides that no self-funded ERISA plan "shall be deemed to be an insurance company or other insurer . . . or to be engaged in the business of insurance . . . for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts . . . ." 29 U.S.C. § 1144(b)(2)(B). In other words, even if a state law is saved from preemption because it relates to insurance, the deemer clause prevents the application of that law to self-funded ERISA plans.

Because the savings clause is most relevant to insured ERISA plans, such as any plan offered by HMOP, while the deemer clause applies only to self-funded ERISA plans, such as the Tyson plan, we consider each clause in turn.

### a.    Savings clause

The parties do not contest that but for the savings clause, ERISA preempts the Arkansas PPA as a statute that relates to an employee benefit plan, an issue that was a significant part of our analysis in *Prudential I*. 154 F.3d at 818-26; 29 U.S.C. § 1144(a). After first establishing in *Prudential I* that the Arkansas PPA relates to an employee benefit plan, we used the two-faceted analysis introduced by the Supreme Court in *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724 (1985), and reaffirmed in *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41 (1987), to conclude that the Arkansas PPA was not a law that regulates insurance, and, therefore, it was not saved from preemption. 154 F.3d at 826-31.

Applying the *Metropolitan Life* analysis, this Court considered, first, whether the Arkansas PPA "regulates insurance" under a "common sense view," and, second, whether the Arkansas PPA "regulates insurance" under the three factors used to interpret the "business of insurance" reference in the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 – 1015. *See Metro. Life*, 471 U.S. at 740, 743. We first concluded that "the Arkansas PPA is not a state law that 'regulates insurance' under a common-sense approach . . . because it is not a law that is 'specifically directed toward that

-16-

industry.'" *Prudential I*, 154 F.3d at 829 (quoting *Pilot Life*, 481 U.S. at 50; citing *United of Omaha v. Business Men's Assurance Co. of Am.*, 104 F.3d 1034, 1039 (8th Cir. 1997)). We also concluded that "[n]or does the Arkansas PPA satisfy any of the McCarran-Ferguson factors identified in *Metropolitan Life*." *Prudential I*, 154 F.3d at 829. Thus, we held that under both the common-sense approach and the McCarran-Ferguson factors, the Arkansas PPA was not a law that regulates insurance and was not saved from preemption under ERISA. *Id*. at 830.

In *Miller*, the Supreme Court expressly repudiated the relevance of the McCarran-Ferguson factors to the savings clause analysis and held that "for a state law to be deemed a 'law . . . which regulates insurance' under § 1144(b)(2)(A), it must satisfy two requirements." 538 U.S. 329, 341-42. Those two requirements are the following: "First, the state law must be specifically directed toward entities engaged in insurance," and second, "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Id*. at 342 (citations omitted).

Neither HMOP nor Tyson contest that the Arkansas PPA satisfies the second prong of *Miller*, nor should they. As the Supreme Court explained in *Miller*: "By expanding the number of providers from whom an insured may receive health services, AWP laws alter the scope of permissible bargains between insurers and the insured," and, as a result, substantially affect "the type of risk pooling arrangements that insurers may offer." *Id*. at 338-39; *see also Metro. Life*, 471 U.S. at 744-47 (holding that mandated-benefit laws are laws that regulate the terms of insurance contracts and, as such, regulate insurance); *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 366-67 (2002) (holding that because HMOs spread risk in the manner of insurers, independent-review provisions are saved from preemption). Thus, to determine whether the Arkansas PPA regulates insurance for the purposes of ERISA's savings clause, this Court need only determine whether the Arkansas PPA is specifically directed toward entities engaged in insurance.

Addressing the first prong of the *Miller* test, HMOP and Tyson both argue that by requiring a state law to be "specifically directed toward entities engaged in insurance," the Supreme Court effectively reaffirmed the common-sense test of *Metropolitan Life* and *Pilot Life*. Because we held in *Prudential I* that the Arkansas PPA did not regulate insurance under the common-sense approach, HMOP and Tyson contend that *Miller* did not affect the validity of our analysis in that case. Admittedly, the Supreme Court in *Miller* cited *Pilot Life* for the proposition that "a state law must be 'specifically directed toward' the insurance industry in order to fall under ERISA's savings clause; laws of general application that have some bearing on insurers do not qualify." *Miller*, 538 U.S. at 334 (quoting *Pilot Life*, 481 U.S. at 50). While the source of the standard may have remained the same, how that standard was applied by this Court in *Prudential I* did not.

The *Miller* Court rejected the reasons that this Court advanced in *Prudential I* to support our holding that the Arkansas PPA was not specifically directed toward insurance or the insurance industry under the "common sense" test. First, the *Prudential I* Court stated that the Arkansas PPA was not directed toward insurance because it created an opportunity for providers to participate in health plans. *Prudential I*, 154 F.3d at 829. In contrast, the *Miller* Court held that the Kentucky AWP laws are specifically directed toward entities engaged in insurance even though "as a *consequence* of Kentucky's AWP laws, entities outside the insurance industry (such as health-care providers) will be unable to enter into certain agreements with Kentucky insurers." *Miller*, 538 U.S. at 335.[6]

_____

[6]As this court recognized in *Prudential I*, whether the Arkansas PPA expressly regulated "health care insurers" rather than "health benefit plans" is not determinative. *See*, *e.g.*, *Prudential I*, 154 F.3d at 829. In *Miller*, the Supreme Court liberally interchanged discussion of "health benefit plans" and "health care insurers" because the two Kentucky statutes differed as to what they expressly regulated. *Miller*, 538 U.S. at 331-32 & *passim*. Thus, under *Miller*, an AWP statute can be

Second, the *Prudential I* Court stated that the Arkansas PPA's definitions of "health benefit plans" and "health care insurers" go too far "beyond the scope of the insurance industry" to be specifically directed toward entities engaged in insurance. *Prudential I*, 154 F.3d at 829 (citing *Pilot Life*, 481 U.S. at 50). The *Prudential I* Court stated both that "[a]n act that purports to regulate 'health benefit plans' defined so broadly as to include employers and administrators of self-insured plans, as well as traditional insurance, simply does not fit within a common-sense view of a law directed specifically toward the insurance industry," and that "the statutory term 'health care insurers' also goes well beyond the scope of the insurance industry," because its statutory definition includes not only insurance companies but also HMOs, preferred provider organizations, physician hospital organizations, third-party administrators, and other entities not regularly thought to be in the insurance industry. *Id*.

In *Miller*, however, the Supreme Court expressly rejected the argument that a law does not regulate insurance for purposes of the savings clause if it regulates more than traditional insurance companies. In rejecting this argument, the Supreme Court returned to the plain language of the savings clause by noting that "ERISA's savings clause does not require that a state law regulate 'insurance companies' or even 'the business of insurance' to be saved from pre-emption; it need only be a 'law . . . which regulates insurance' . . . and self-insured plans engage in the same sort of risk pooling arrangements as separate entities that provide insurance to an employee benefit plan." *Miller*, 538 U.S. at 336 n.1. In addition, the *Miller* Court stated that the Kentucky AWP laws were saved from preemption even though both laws "apply to . . . HMOs that do not act as insurers but instead provide only administrative services to self-insured plans" because "administering self-insured plans . . . suffices to bring them within the activity of insurance" under the savings clause. *Id*.; *see also Rush*

---

saved from preemption whether it regulates health benefit plans or insurers that provide health benefit plans.

*Prudential*, 536 U.S. at 372 (stating that "some overbreadth" in the application of Illinois's independent-review laws provides "no reason to think Congress would have meant such minimal application to noninsurers to remove a state law entirely from the category of insurance regulation saved from preemption"). As *Miller* makes plain, it is not the case that a statute must regulate only traditional insurance companies to be a statute specifically directed toward entities engaged in insurance. Rather, that statute need only regulate entities engaged in the activity of insuring.[7]

For the above reasons, we hold that the Supreme Court's decision in *Miller* undermined our prior reasoning in *Prudential I*. While the *Miller* Court's rejection of our prior reasoning to support the conclusion that the Arkansas PPA was not saved from express preemption under ERISA does not necessarily compel a holding that the Arkansas PPA is saved from preemption, we see no reason why the *Miller* Court's reasoning would not require such a result in this case. In particular, the *Miller* Court's holding that a law that regulates non-insuring entities can be saved from preemption eliminates any concern about whether the Arkansas PPA is specifically directed toward entities engaged in insurance. *See Miller*, 538 U.S. at 336 n.1. Thus, under the first prong of *Miller*'s two-step test, we hold that the Arkansas PPA is a "state law . . . specifically directed toward entities engaged in insurance," as that standard was applied in *Miller*. *Id*. at 342.

---

[7]In addition, we note that in *Rush Prudential* the Supreme Court emphasized that with regard to the savings clause "'there is no ERISA preemption without clear manifestation of congressional purpose.'" *Rush Prudential*, 536 U.S. at 387 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 236 (2000). Although the *Prudential I* Court acknowledged this "presumption" against preemption when interpreting the general applicability of ERISA's express preemption clause, after *Rush Prudential*, we must recognize the same presumption in our application of the savings clause as well. *Prudential I*, 154 F.3d at 822.

HMOP attempts to distinguish *Miller* on the ground that the Arkansas PPA, by its terms, applies to more non-insurance entities than the Kentucky AWP laws considered in *Miller.* For that reason, HMOP argues that the Arkansas PPA is not specifically directed toward entities engaged in insurance. Contrary to HMOP's contentions, we conclude that the relevant statutory provisions in the Kentucky AWP laws are so similar to the Arkansas PPA as to require our conclusion that the Arkansas PPA is saved from preemption. For example, all three statutes contain similar prohibition clauses.[8] In addition, the Arkansas PPA's definitions of "health care insurer" and "health benefit plan," which HMOP claims to be much broader than the Kentucky AWP laws considered in *Miller*, possess meaningful cognates in the Kentucky laws.[9] The Arkansas PPA, like the Kentucky AWP laws, aims to compel

---

[8]*Compare*, *e.g.*, Ark. Code Ann. § 23-99-204(a)(3) ("A health care insurer shall not, directly or indirectly . . . (3) Prohibit or limit a health care provider . . . willing to accept the health benefit plan's operating terms and conditions, schedule of fees, covered expenses, and utilization regulations and quality standards, from the opportunity to participate in that plan."), *with* Ky. Rev. Stat. Ann. § 304.17A-270 ("A health insurer shall not discriminate against any provider. . . who is willing to meet the terms and conditions for participation established by the health insurer. . . .").

[9]*Compare* Ark Code Ann. § 23-99-203(f) ("'Health care insurer' means any entity, including but not limited to: (1) insurance companies; (2) hospital and medical services corporations; (3) health maintenance organizations; (4) preferred provider organizations; (5) physician hospital organizations; (6) third party administrators; and (7) prescription benefit management companies, authorized to administer, offer, or provide health benefit plans."), *with* Ky. Rev. Stat. Ann. § 304.17A-170(7) ("'Health care insurer' means any entity, including but not limited to insurance companies, hospital and medical services corporations, health maintenance organizations, preferred provider organizations, and physician hospital organizations, that is authorized by the state of Kentucky to offer or provide health benefit plans, policies, subscriber contracts, or any other contracts of similar nature which indemnify or compensate health care providers for the provision of health care services."); *see also* Ark. Code Ann. § 23-99-203(c) (defining "health benefit plan"), *and* Ky. Rev. Stat. Ann. § 304.17A-005(18) (defining "health benefit plan").

every health benefit plan to allow any willing and otherwise eligible provider into its provider network. In *Miller*, the Supreme Court held that this aim constituted regulating insurance under ERISA's savings clause, and we see no reason why that conclusion should not be applied to the Arkansas PPA.

Therefore, applying the *Miller* Court's two-pronged savings-clause test, the Arkansas PPA is a "law . . . which regulates insurance," and is saved from preemption under ERISA § 514. As such, we affirm the district court's dissolution of the *Prudential I* injunction against the application of the Arkansas PPA to non-ERISA plans and insured ERISA plans, including those offered by HMOP.

### b. Deemer clause

With regard to self-funded ERISA plans, our ERISA preemption analysis does not end with the savings clause. Instead, under the deemer clause a self-funded ERISA plan, such as Tyson's, cannot be deemed to be an insurance company or other insurer subject to state regulation because of the savings clause. The *Miller* decision only interpreted ERISA's savings clause. The *Miller* Court did not consider the effects of the deemer clause because no self-funded ERISA plan was a party to that case. *See Miller*, 538 U.S. at 336 n.1 ("The deemer clause presents no obstacle to Kentucky's law, which reaches only those employee benefit plans 'not exempt from state regulation by ERISA.'"). Thus, we must consider whether, in light of the deemer clause, Tyson's self-funded ERISA plan is subject to regulation by the Arkansas PPA. Following recent Supreme Court decisions applying the deemer clause, we hold that it is not.

Similar to the Kentucky statutes considered in *Miller*, the Arkansas PPA provides that it "shall not apply to self-funded or other health benefit plans that are exempt from state regulation by virtue of [ERISA]." Ark. Code Ann. § 23-99-209. Under this exemption, self-funded ERISA plans, such as Tyson's, are not directly

regulated by the Arkansas PPA. Recognizing this exemption, the movants argue that because Tyson contracts with insurance companies for access to their provider networks, the Arkansas PPA can indirectly regulate the Tyson plan through those third-party insurance companies.

As support for this argument, the movants reference the Supreme Court's statement in *Miller* that non-insuring entities administering self-insured plans are engaged in the activity of insurance for the purpose of the savings clause. *Miller*, 538 U.S. at 336 n.1 ("[N]oninsuring HMOs would be administering self-insured plans, which we think suffices to bring them within the activity of insurance for purposes of [the savings clause]."). The movants, however, take this statement out of context. The *Miller* Court's discussion of third-party administrators came as a response to an argument against the application of the savings clause to the Kentucky AWP laws – namely that the application of those laws to non-insuring HMOs prevents the laws from being specifically directed toward entities engaged in insurance. *Id.* In *Miller*, the Supreme Court focused solely on the application of the savings clause. The movants' argument here fails because it ignores the application of the deemer clause to self-funded ERISA plans, a non-issue in *Miller*, but the controlling issue in this case with regard to the Tyson plan.

The Supreme Court has noted repeatedly that because of the deemer clause, statutes that indirectly regulate self-funded ERISA plans are not saved from preemption to the extent such statutes apply to self-funded plans. *See Rush Prudential*, 536 U.S. at 371 n.6 (noting that because of the deemer clause, an Illinois independent review statute "would not be 'saved' as an insurance law" to the extent it indirectly applied to self-funded plans); *FMC Corp. v. Holliday*, 498 U.S. 52, 64 (1990) ("Our interpretation of the deemer clause makes clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the State may not regulate it."); *Metro. Life*, 471 U.S. at 747 ("We are aware that our decision results in a distinction between

insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the 'deemer clause,' a distinction Congress is aware of and one it has chosen not to alter."). Nothing in *Miller* indicates a change in the Court's deemer-clause analysis. Thus, we hold that not only does the Arkansas PPA exempt the Tyson plan and other self-funded ERISA plans from direct regulation but also that ERISA preempts any indirect state regulation of those plans because of the deemer clause.

For the above reasons, we reverse the district court's dissolution of the *Prudential I* injunction against the enforcement of the Arkansas PPA with respect to self-funded ERISA plans. We remand to the district court with directions to enter an injunction prohibiting both direct and indirect enforcement of the Arkansas PPA against self-funded ERISA plans, such as the Tyson plan.[10]

## 2.     Complete preemption under ERISA § 502

Because we hold that ERISA saves the Arkansas PPA from preemption with respect to insured ERISA health benefit plans, we must now consider an issue that was not presented to the *Prudential I* Court: whether the doctrine of complete preemption under ERISA applies to the Arkansas PPA's civil penalties provision, Ark. Code Ann. § 23-99-207. We hold that ERISA's civil enforcement provision

---

[10]Our holding concerning express preemption, that the Arkansas PPA is preempted as applied to self-funded ERISA plans but not preempted as to all other health benefit plans, acknowledges the distinction between ERISA and non-ERISA health benefit plans made in the original district court opinion in this matter. *See Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr.*, 964 F.Supp. at 1299-1300 (holding the Arkansas PPA was preempted, but only as applied to ERISA plans). Because ERISA does not apply to non-ERISA plans, ERISA could not preempt a statute as applied to those plans. To the extent that the *Prudential I* injunction covered non-ERISA plans, that injunction should be dissolved.

completely preempts the Arkansas PPA's civil penalties provision, but only with respect to suits that could have been brought under ERISA.

Unlike the Kentucky statutes the Supreme Court considered in *Miller*, the Arkansas PPA contains a civil penalties provision. That provision states that, "Any person adversely affected by a violation of this subchapter may sue in a court of competent jurisdiction for injunctive relief against the health care insurer and, upon prevailing, shall, in addition to such relief, recover damages of not less than one thousand dollars ($1,000), attorney's fees, and costs." Ark. Code Ann. § 23-99-207. Invoking the doctrine of complete preemption discussed above, HMOP contends that ERISA's civil enforcement provision completely preempts the enforcement of the civil penalties provision of the Arkansas PPA, and, as a consequence, this Court should enjoin enforcement of that section.

In *Aetna Health Inc. v. Davila*, the Supreme Court held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 124 S. Ct. at 2495 (citing *Pilot Life*, 481 U.S. at 54-56). A state cause of action is completely preempted under ERISA "if an individual, at some point in time, could have brought his claim under [ERISA § 502], and where there is no other independent legal duty that is implicated by a defendant's actions." *Id*. at 2496. In addition, even a state law that is saved from express preemption under ERISA § 514 "will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." *Id*. at 2500. The Supreme Court emphasized that a state-law cause of action need not duplicate an ERISA provision to be preempted. *Id*. at 2499. Rather, a state-law cause of action is preempted if it arises from a duty created by ERISA or the terms of the relevant health benefit plan. *Id*. at 2497-99 (holding that the alleged "tort" duty "to exercise ordinary care" under the Texas Health Care

Liability Act did not arise independently of the "contract" duties actionable under ERISA or the plan's terms).

The "comprehensive legislative scheme" of ERISA § 502 creates "six carefully integrated civil enforcement provisions." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985); *see also Davila*, 124 S. Ct. at 2495. Most relevant to the Arkansas PPA's civil penalties provision, ERISA § 502(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). Under ERISA § 502, any suit by a plan participant to enforce benefits wrongly denied that participant would be completely preempted. Thus, any suits by plan participants brought under the civil penalty provision of the Arkansas PPA because the plan denied reimbursement to the participant for services from an otherwise qualified and willing provider are completely preempted.

We, however, offer no opinion as to the exact scope of this preemption because the Arkansas PPA's civil penalties provision extends to "[a]ny person adversely affected by a violation" of the Arkansas PPA and invites a number of possible suits that would require speculation beyond the scope of this appeal. Rather, we hold generally that with respect to any cause of action brought under Ark. Code Ann. § 23-99-207 that could have been brought under ERISA, the Arkansas PPA is preempted and the resulting cause of action is recharacterized as an action brought under ERISA. Such a cause of action is removable to federal court. *See*, *e.g.*, *Hull v. Fallon*, 188 F.3d 939, 942 (8th Cir. 1999).

Accordingly, we reverse the district court's dissolution of the *Prudential I* injunction against the enforcement of the civil penalties provision of the Arkansas PPA as applied to any cause that could have been brought under ERISA § 502 and remand to the district court to enter judgment consistent with this opinion.

-26-

## III. CONCLUSION

Based on the foregoing, we hold that the Arkansas PPA is saved from preemption under ERISA § 514 except with regard to self-funded ERISA plans. We also hold that ERISA § 502 completely preempts the civil penalties provision of the Arkansas PPA, Ark. Code Ann. § 99-23-207, with respect to any cause of action that could have been brought under ERISA.

Therefore, we affirm the district court's dissolution of the *Prudential I* injunction except for the following: (1) we reverse the district court's dissolution of the *Prudential I* injunction with regard to self-funded ERISA plans, and (2) we reverse the district court's dissolution of the *Prudential I* injunction with regard to any cause of action brought under the Arkansas PPA's civil penalties provision that could have been brought under ERISA § 502.

Consequently, we affirm in part, reverse in part, and remand to the district court to enter judgment consistent with this opinion.

_____