# IN THE SUPREME COURT OF IOWA

No. 150 / 06-1239

Filed March 7, 2008

**BERNARD BUECHEL,** Individually and as
Coexecutor of the ESTATE OF JUANITA BUECHEL,
**ANGELA PAULY,** Individually and as Coexecutor
of the ESTATE OF JUANITA BUECHEL, **DANIEL
BUECHEL, MONICA HAGEN, MARY ROSE,
TERESA SMITH,** and **JOANNE MALLICOAT,**

      Appellants,

vs.

FIVE STAR QUALITY CARE, INC. d/b/a PRAIRIE
RIDGE CARE & REHABILITATION; FSQ, INC.;
SHOPCO-IA, LLC; FIVE STAR QUALITY CARE-IA, LLC;
SNH-IOWA, INC.; FIVE STAR QUALITY CARE-IA, INC.;
SENIOR HOUSING PROPERTIES TRUST; SPTIHS PROPERTIES
TRUST; JANE DOES - ADMR'R; DIR. OF NURSING; NURSING
ASSISTANTS; JOHNSTON ENTERS., INC. d/b/a JOHNSTON
MED. STAFFING; and MARI BETH JOHNSTON a/k/a BETH
JOHNSTON a/k/a MARI B. HEFTA, Individually and d/b/a
JOHNSTON MED. STAFFING; DEF CORP.; GHI CORP.;
JOERNS FURNITURE CO., INC.; JOERNS HEALTHCARE, INC.;
SUNRISE HABITAT, INC. n/k/a SUNRISE MED. CCG, INC.,

      Defendants,

**SUNRISE HABITAT, INC.
n/k/a SUNRISE MED. HHG, INC.,**

      Appellee.

---

Appeal from the Iowa District Court for Des Moines County, Robert
D. Fahey, Jr., Judge.

Plaintiffs appeal the district court's grant of summary judgment on
statute-of-limitation and statute-of-repose grounds. **AFFIRMED.**

Christopher D. Stombaugh and Sheila Stuart Kelley of Kopp, McKichan, Geyer, Skemp & Stombaugh, LLP, Platteville, Wisconsin, David W. Terry of Johnson, Fellows, Lake & Terry, St. Louis, Missouri, and R. Craig Oppel of Allbee, Barclay, Allison & Denning, P.C., Muscatine, for appellants.

Robert D. Houghton and Diane Kutzko of Shuttleworth & Ingersoll, PLC, Cedar Rapids, for appellee.

**APPEL**, **Justice**.

In this case, we are presented with an appeal of a district court order granting summary judgment to one defendant in a wrongful death action on the grounds that the claim was barred by the relevant statutes of limitations and repose.  For the reasons presented below, we affirm the order of the district court.

## I.  Factual Background and Prior Proceedings.

Juanita Buechel died during the early morning hours of January 20, 2001 at Prairie Ridge Care & Rehabilitation (Prairie Ridge), a nursing home facility located in Mediapolis, Iowa.  On the following day, the family met with the nursing home administrator.  The administrator informed the family that Juanita was found asphyxiated, lodged in the wide space between the mattress and the bed rails.  The family was told that when staff members discovered Juanita, she was found sitting on the floor with her back against the bed and her head and throat caught between the bed rail and the mattress.

The circumstances of her death suggested that Juanita had accidentally strangled herself.  An autopsy by Dr. Eugenio Torres concluded that death was the result of accidental asphyxiation due to compression of the neck.

Both the Des Moines County Sheriff and the Iowa Department of Inspections and Appeals (DIA) conducted investigations.  The sheriff concluded that Juanita's death was accidental, noting that Dr. Torres indicated that the beds in the facility may have to be changed so that no one else would die as a result of the same conditions.  The DIA report, dated February 22, 2001, also found that the death was accidental, noting that the mattress used was not the standard-in-size for the bed.

Both reports were made available to Juanita's family shortly after they were prepared.

On January 15, 2003, the plaintiffs filed an action against the nursing home alleging negligence in connection with Juanita's death. The petition also included a products liability claim against the unnamed manufacturer of the bed. The petition certified pursuant to Iowa Code section 613.18(3) (2003) that the manufacturer of the bed had not yet been identified.

Plaintiffs commenced formal discovery upon the filing of the suit. On September 15, 2003, the plaintiffs learned that the Joerns Furniture Company and Sunrise Medical, Joerns's successor, manufactured the bed in question. Plaintiffs, however, did not move to amend their petition to include Joerns and Sunrise until October 28, 2003, more than a month after these entities were first identified in discovery.

After the motion to amend was granted, Sunrise asserted defenses arising out of both the applicable statute of limitations and the statute of repose. Sunrise argued that the cause of action accrued on January 21, 2001, when the family learned that Juanita's death was caused by accidental asphyxiation when her head was caught between the mattress and the bed frame. Armed with this information, Sunrise asserts that the plaintiffs were on inquiry notice regarding all potential causes of action arising from Juanita's death, including those against the bed manufacturer. According to Sunrise, the two-year statute of limitations began running on January 21, 2001.

Sunrise concedes that by filing the action on January 15, 2003 and making the appropriate certification under Iowa Code section 613.18(3), the running of the statute of limitations was thereafter tolled. Iowa Code section 613.18(3) provides that the two-year statute of

limitations is tolled "against the manufacturer upon certification that the manufacturer is unknown until it is identified in discovery." Sunrise argues that the statute of limitations ran from the date the cause of action accrued until the Iowa Code section 613.18(3) certification was filed, it was then tolled, and began to run again when the plaintiffs discovered the information necessary to name Sunrise as a party. According to Sunrise, while the statute of limitations was tolled by the filing of the petition with the Iowa Code section 613.18(3) certification, there were only five days remaining in which to file a claim once the plaintiffs learned the identity of the manufacturer. Thus, the statute of limitations for plaintiffs' claims against Sunrise expired on September 20, 2003.

The plaintiffs countered that the cause of action did not, in fact, accrue on January 21, 2001. Plaintiffs claim that the reports available at the time listed the cause of death to be an improperly-sized mattress. The plaintiffs claim to have been "thrown off the scent" of a possible products liability claim by these reports. According to the plaintiffs, an issue of fact was raised regarding their diligence in discovering this cause of action.

Sunrise also argued that plaintiffs' claim was barred by the statute of repose. Under Iowa Code section 614.1(2A)(a), actions alleging products liability claims "shall not be commenced more than fifteen years after the product was first purchased . . . or installed for use. . . ."

The district court granted Sunrise's motion for summary judgment. According to the district court, where death occurs under plainly suspicious or unusual circumstances, a reasonably diligent person is charged with the duty to investigate. The district court emphasized that the plaintiffs had knowledge supporting some sort of actionable claim,

and that knowledge included information that the mattress and bed frame were involved. As a result, the district court reasoned that plaintiffs had a duty from January 21, 2001 onward to discover all theories that they might wish to pursue in support of their wrongful death action.

In the alternative, the district court also found that the claim against Sunrise was barred by the statute of repose.

## II. Standard of Review.

We review a district court's ruling on a motion for summary judgment for correction of errors at law. *Schlote v. Dawson*, 676 N.W.2d 187, 188 (Iowa 2004). Summary judgment is available only when there is no genuine issue of material fact. *Drainage Dist. No. 119, Clay County v. Inc. City of Spencer*, 268 N.W.2d 493, 499 (Iowa 1978). "A 'genuine issue' of material fact exists if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party." *Baratta v. Polk Co. Health Serv.*, 588 N.W.2d 107, 109 (Iowa 1999) (citing *Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992)). The burden of showing the nonexistence of a material fact is on the moving party, and every legitimate inference that reasonably can be deduced from the evidence should be afforded the nonmoving party. *Randol v. Roe Enters., Inc.*, 524 N.W.2d 414, 415–16 (Iowa 1994) (quoting *Martinko v. H-N-W Assocs.*, 393 N.W.2d 320, 321 (Iowa 1986)).

## III. Discussion.

**A. Preliminary Issue of Jurisdiction.** After submission of this appeal, this court requested supplemental briefing on the question of whether this was an appeal as a matter of right or whether the appeal was interlocutory in nature. Specifically, we asked the parties to address the issue of severability in light of Iowa's Comparative Fault Statute.

Whether a complete dismissal of one defendant in a multi-defendant action is final for purposes of appeal turns on the question of whether the interest of the dismissed defendant is severable from the claims against other defendants. *McGuire v. City of Cedar Rapids*, 189 N.W.2d 592, 595 (Iowa 1971). Where the interests of the dismissed defendant are severable, a judgment or decree dismissing one defendant is a final judgment as to them. *Id.* at 597. In this case, the only claim against Sunrise is based on products liability, while the claim against Prairie Ridge and the other defendants is based upon negligence.

The parties each argue that because the wrongful death claims are based upon different theories, they are wholly severable. We disagree. Iowa's Comparative Fault Statute is codified in Iowa Code chapter 668. That chapter defines fault to include claims based upon theories of negligence as well as those rooted in strict liability, such as products liability claims. Iowa Code § 668.1. Although comparative fault analysis does not in and of itself determine if a defendant is liable, it does determine the relative liability as between the named defendants. In addition, our comparative fault statute precludes fault-sharing with a defendant not party to the suit. *Spaur v. Owens-Corning Fiberglass Corp.*, 510 N.W.2d 854, 863 (Iowa 1994). Sunrise's dismissal, therefore, potentially affects the percentage of fault awarded to Prairie Ridge and the remaining defendants. *McGuire,* 189 N.W.2d at 597. As such these claims are not wholly severable, and we deem this appeal interlocutory.

Because it is often difficult to determine whether an order is final, this court has routinely held that appeals improvidently filed as a matter of right may be treated as applications for interlocutory appeal. Iowa R. App. P. 6.1(*c*); *Rowen v. LeMars Liberty Mut. Ins. Co.,* 357 N.W.2d 579, 581 (Iowa 1984). As a general rule, however, we sparingly grant

interlocutory appeals on this basis. *River Excursions, Inc. v. City of Davenport,* 359 N.W.2d 475, 477 (Iowa 1984). The main factor in determining whether such an interlocutory appeal should be granted is whether consideration of the issues would serve the "interest of sound and efficient judicial administration. . . ." *Hammer v. Branstad,* 463 N.W.2d 86, 89 (Iowa 1990).

Having reviewed the matter, we find that the substantial rights of the parties and the interests of judicial efficiency support granting this interlocutory appeal. We now turn to the issues raised by the parties.

**B. Statute of Limitations.** The statute of limitations for strict liability claims resulting in personal injuries is set forth in Iowa Code section 614.1(2). The statute provides that such claims must be brought within two years of the accrual of the cause of action. The two-year statute of limitations, however, is tolled in product liability cases against a manufacturer upon certification that the manufacturer is unknown. Iowa Code § 613.18(3).

In this case, the statute of limitations against Sunrise was tolled temporarily by the filing of plaintiffs' petition on January 15, 2003. On September 15, Sunrise's identity was disclosed in discovery. During the period of time between January 15 and September 15, the parties agree that the statute of limitations was tolled pursuant to Iowa Code section 613.18(3). The parties dispute, however, when the cause of action accrued in this case.

Sunrise's argument is based on the concept of inquiry notice. Under Iowa law, the statute of limitations for personal injury actions accrues at the time a plaintiff discovers or in the exercise of reasonable care should have discovered "all the elements of the action." *Franzen v. Deere & Co.,* 377 N.W.2d 660, 662 (Iowa 1985). This latter concept—

"should have discovered"—is commonly referred to as inquiry notice. *Sparks v. Metalcraft, Inc.*, 408 N.W.2d 347, 352 (Iowa 1987).

A party is placed on inquiry notice when a person gains sufficient knowledge of facts that would put that person on notice of the existence of a problem or potential problem. *Id.* On that date, a person is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation. *Id.* at 351–52. Once a person is aware that a problem exists, the person has a duty to investigate "even though the person may not have knowledge of the nature of the problem that caused the injury." *Id.*

Sunrise argues that the plaintiffs in this case were placed on inquiry notice of the potential claim on January 20, 2001. On that date, plaintiffs were informed that Juanita had been found asphyxiated with her head caught in the bed frame. According to Sunrise, these facts put the plaintiffs on sufficient notice that a problem existed and that a reasonably diligent investigation would have revealed design defects in the bed.

Operating on the premise that the statute of limitations for plaintiffs' claims against Sunrise began to run on January 20, 2001, Sunrise notes that the plaintiff filed its original action on January 15, 2003, five days prior to the expiration of the two-year statute of limitations. Conceding that the statute of limitations was tolled during the period between January 15, 2003 and September 15, 2003, Sunrise contends that only five days remained after September 15 to file a claim against Sunrise. As a result, Sunrise argues that plaintiffs' filing of an amendment to name Sunrise on October 28, 2003 was untimely under the two-year statute as a matter of law.

The plaintiffs, however, contend that there is at least a genuine question of material fact as to when the cause of action against Sunrise accrued. Plaintiffs claim that they were not placed on inquiry notice that there was something defective or otherwise wrong with the actual bed or that the bed frame itself was a cause of Juanita's death until they were advised by newly retained counsel, who was experienced in products liability matters, that the bed design may have contributed to Juanita's death. Plaintiffs assert that their knowledge of facts prior to that date indicated that the cause of Juanita's death was the incorrectly-sized mattress.

In support of its position, plaintiffs rely on *Bressler v. Graco Children's Products, Inc.*, 43 F.3d 379 (8th Cir. 1994), a case applying Iowa law. In *Bressler*, the Court of Appeals for the Eighth Circuit allowed a products liability case to go forward even though it was filed more than two years after the death of the plaintiffs' child. *Id.* at 382. In that case, a mother put her one-month-old daughter to bed in a cradle swing. *Id.* at 380. At one o'clock in the morning, the mother checked on her daughter only to find the baby motionless and blue in the corner of the cradle, which was not making its full motion. *Id.* The baby ultimately died. An autopsy determined the cause of death to be Sudden Infant Death Syndrome (SIDS). *Id.* The parents, however, later found out that the swing manufacturer had recalled the swing based on reports of infant suffocation. *Id.* The parents filed a products liability suit against the manufacturer approximately ten months after the recall, but more than two years after the baby died. *Id.*

In *Bressler*, the Eighth Circuit noted that the plaintiffs were "thrown off the scent" by the autopsy report which stated that the cause of death was SIDS and did not suggest that the cradle swing played any

role in the death. *Id.* at 381. In addition, the court in *Bressler* stated that summary judgment based on inquiry notice with respect to a statute-of-limitations defense was inappropriate where the plaintiffs should not have known that "the cradle swing was defective and unreasonably dangerous." *Id.* at 380–81.

We agree with Sunrise and find *Bressler* distinguishable. In this case, the plaintiffs were told by the nursing home staff on January 21, 2001 that Juanita had died by asphyxiation and that her head was caught in the rails of the bed. On this date, they knew that the rails of the bed had played a causative role in her death. At this point, plaintiffs also knew that an unusual event had occurred, namely, an accidental death by positional asphyxiation involving compression of Juanita's throat between the mattress and the bed rail. In the words of *Franzen*, they not only were aware of the causal role of the rail, but they knew there was a problem. *Franzen*, 377 N.W.2d at 662. Bed rails are not ordinarily a contributing cause of accidental death. As in *Franzen*, although the plaintiffs did not know the nature of the defect, they were aware of sufficient facts to put a reasonable person on inquiry notice of a potential problem, requiring further investigation. *Id.* at 663; *Sparks*, 408 N.W.2d at 351.

The factual context in *Bressler*, however, is materially different. In *Bressler*, the autopsy indicated that death of the infant was the result of natural causes. The plaintiffs had no reason to suspect that the accidental death was caused in whole or in part by the cradle. The facts in *Bressler* are in sharp contrast with this case. Here, the undisputed facts show that plaintiffs knew on January 21, 2001 that the cause of death was accidental and that the bed frame played a role in causing the asphyxiation. The plaintiffs were never "thrown off the scent" by an

autopsy or investigation that suggested a natural death. Indeed, the sheriff's report dated a day after the accident indicated that Dr. Torres, who conducted an autopsy, was concerned that the beds in the facility would need to be changed to avoid future incidents. While the plaintiffs were certainly aware of the potential role of the undersized mattress in Juanita's death, they also knew that the bed rail itself played a role in her unfortunate positional asphyxiation.

Further, we do not read *Bressler* as requiring that plaintiffs have some degree of knowledge about the specific defect in the bed. All that is required is that a person has reason to believe that "a problem" with the bed may be present that requires diligent investigation and that such diligent investigation would have revealed the existence of the defect.

Under the teaching of *Franzen*, we conclude that the plaintiffs' claim against Sunrise is barred by the two-year statute of limitations. The plaintiffs were on inquiry notice on January 21, 2001. On that date, the plaintiffs' action accrued and the statute of limitations began to run.

**C. Other Issues.** The district court also found that plaintiffs' claim against Sunrise was barred by the fifteen-year statute of repose found in Iowa Code section 614.1(2A)(*a*). Plaintiffs raise a number of arguments suggesting that the district court erred on this issue. In light of the dispositive nature of our ruling on the statute-of-limitations issue, it is not necessary to address any questions related to the statute of repose.

**IV. Conclusion.**

The ruling of the district court dismissing the plaintiffs' wrongful death action against Sunrise on statute-of-limitations grounds is affirmed.

**AFFIRMED.**