Carolyn I. McGUIRE, Guardian and Conservator of Patrick LeRoy McGuire, and Carolyn I. McGuire, Individually, Appellants,

v.

CITY OF CEDAR RAPIDS, Iowa, Appellee.

DORY BUILDERS, INC., Defendant and Third-Party Plaintiff,

v.

CITY OF CEDAR RAPIDS, Iowa, and Howard R. Green Company, Third-Party Defendants.

No. 54408.

Supreme Court of Iowa.

Sept. 9, 1971.

Keith, Gallagher, Lybbert & Martin,
Waterloo, for appellants.

David F. McGuire, Cedar Rapids, for appellee.

Shuttleworth & Ingersoll, Cedar Rapids, for defendant and third-party plaintiff.

Barnes, Wadsworth, Elderkin, Locher & Pirnie, Cedar Rapids, for third-party defendants.

MASON, Justice.

Carolyn I. McGuire filed a petition at law consisting of four divisions to recover damages for injuries sustained by her husband, Patrick. Two of these divisions are against the city of Cedar Rapids, a municipal corporation, and in the other two Dory Builders, Inc., a Minnesota corporation authorized to do business in Iowa, is named defendant. All claims for damages arise from the same accident at the Cedar Rapids Disposal Plant September 21, 1967. The matter comes to us on plaintiffs' appeal from the trial court's ruling sustaining the motion of Cedar Rapids to dismiss those divisions of the petition directed to the City.

Cedar Rapids operated within the city a sewage disposal plant under the power delegated to it to do so. Section 368.26, The Code. As a part of this plant, the City maintained a building known as a final sludge pumping station. Sometime before the accident the City had contracted with Dory Builders to complete certain repairs and improvements to its sewage disposal plant. The work in progress on September 21 was being performed in accordance with the contract under the supervision of and inspection by employees and agents of the City and Dory Builders.

About 6 p. m. an odorless, invisible and lethol concentration of poisonous sewage gases had accumulated in a dry well pit of the final sludge pumping station. Patrick McGuire, an engineer employed by the Green Engineering Company, entered the building at this time to attempt to rescue two employees of Dory Builders who had previously entered the structure and were lying in the bottom of the dry well pit. After he had entered the building, McGuire was overcome by the gas and as a consequence has been totally and permanently disabled, physically and mentally.

In division 1 Mrs. McGuire brings a separate action as conservator of her husband's property against Cedar Rapids for damages. She alleges the City's negligence was a proximate cause of his injuries. In division 2 Mrs. McGuire re-alleges the same grounds against the City as a theory of recovery of damages allegedly sustained by her individually as a result of loss of her husband's consortium.

In division 3 Mrs. McGuire's action as conservator is against only Dory Builders. She alleges the company's negligence was a proximate cause of Mr. McGuire's injuries and damages. In division 4 she states the same grounds for a cause of action against Dory for those damages suffered by her as an individual by reason of loss of her husband's consortium.

Included as a ground in the motion of Cedar Rapids to dismiss divisions 1 and 2 is the claim of governmental immunity. The City asserts matters urged in those divisions show on their face the doctrine of governmental immunity is applicable to all allegations and acts by which plaintiffs seek to impose liability on Cedar Rapids.

The trial court found the action of the municipality in making certain repairs and improvements to its sewage disposal plant was governmental in nature and sustained the City's motion on the grounds of governmental immunity.

Plaintiffs having failed to amend divisions 1 and 2 or file further pleadings involving Cedar Rapids within seven days after delivery of the trial court's ruling thereby elected to stand on the record. Rule 86, Rules of Civil Procedure.

Dory Builders filed answer and plaintiffs' action against that company remains pending.

Within 30 days from the entry of the ruling plaintiffs filed notice of appeal to this court as a matter of right and did not obtain permission to appeal as required by rule 332, R.C.P., governing interlocutory appeals.

I. Cedar Rapids filed a motion to dismiss plaintiffs' appeal on the theory the dismissal of divisions 1 and 2 of the petition was not a final order and adjudication and had not disposed of the subject matter of the litigation as relates to all parties. The City emphasizes the fact plaintiffs had not obtained leave to appeal under rule 332, R.C.P. This court ordered the motion submitted with the appeal.

The City argues in support for dismissal of the appeal that dismissal of one party defendant is not a final decision for purposes of appeal when other issues and parties still remain in litigation. It contends to permit plaintiffs' appeal at this stage would have the effect of giving two rights of appeal on the same question since under the decision in Reuter v. City of Oskaloosa, 253 Iowa 768, 113 N.W.2d 716, a party who has suffered an adverse ruling on a motion to dismiss one of two or more opposing parties to the lawsuit may on appeal from the final judgment assign as error any interlocutory ruling or final adjudication in the trial court under rule 86.

In Reuter, 253 Iowa at 772–773, 113 N.W. 2d at 719, after stating that the general policy of the law is against piecemeal appeals, we approved the general rule stated in an annotation in 114 A.L.R. 759, "* * * that an order or decree which dismisses an action as to a part only of the defendants, *all of whom are charged to be jointly liable and the interests of all of whom are identical and not severable*, is not a final judgment from which appeal or writ of error will lie while the case remains undisposed of in the lower court as to other defendants." (Emphasis supplied.)

Reference is also made in Reuter to this statement in 4 C.J.S. Appeal & Error § 104,

"as a general rule, an appeal or writ of error will not lie unless there has been a final disposition of the case, not only as to all of the issues, * * * but also as to all of the parties to the suit, * * *. [I]t has been held that a judgment or decree dismissing the action or bill as to less than all of two or more defendants, or a nonsuit as to one of several defendants, is not final so as to permit an appeal."

This statement in 2 Am.Jur., Appeal and Error, section 27 is also set out: "As a general rule, a judgment or decree is not final which settles the cause as to a part only of the defendants." Similar statements now appear in 4 Am.Jur.2d, Appeal and Error, sections 54, 55, 56 and 106.

We call attention to the fact that in Reuter plaintiff's petition consisted of two divisions. In the first plaintiff alleged negligence against both defendants as to the slippery and unsafe condition of the sidewalk and in the other division he alleged defendants were negligent in permitting a ramp to extend from one defendant's building onto the sidewalk. In other words, although the petition in Reuter consisted of two divisions and there were two defendants named, the pleaded ground of negligence was against both defendants. This is not the factual situation presented by the pleadings in the case before us.

In resistance plaintiffs maintain their appeal may be taken as a matter of right since it is not interlocutory in nature but from a final adjudication. They argue that when the trial court sustained the motion of Cedar Rapids to dismiss divisions 1 and 2 no issue remained to be decided as to defendant City when no further pleading was done by plaintiffs involving Cedar Rapids.

Plaintiffs cite rules 86 and 331, R.C.P., among the authorities relied on in support of their position. We set out the pertinent parts of these rules. Rule 86: "If a party is required or permitted to plead further by an order or ruling, the clerk shall forthwith mail or deliver notice of such order

or ruling to the attorneys of record. * * * Unless otherwise provided by order or ruling, such party shall file such further pleading within seven days after such mailing or delivery; and if such party fails to do so within such time, he thereby elects to stand on the record theretofore made. On such election, the ruling shall be deemed a final adjudication in the trial court without further judgment or order; reserving only such issues, if any, which remain undisposed of by such ruling and election." Rule 331: "(a) All final judgments and decisions of courts of record, and any final adjudication in the trial court under rule 86 involving the merits or materially affecting the final decision, may be appealed to the supreme court, except as provided in this rule and in rule 333. * * * "(b) No interlocutory ruling or decision may be appealed, except as provided in rule 332, until after the final judgment· or order. No error in such interlocutory ruling or decision is waived by pleading over, or proceeding to trial. On appeal from the final judgment, there may be assigned as error such interlocutory ruling or decision or any final adjudication in the trial court under rule 86 from which no appeal has been taken, where such ruling, decision, or final adjudication is shown to have substantially affected the rights of the complaining party."

We have said by failing to plead over within the time permitted by rule 86 after trial court entered order sustaining defendant's motion to dismiss, plaintiffs elected to stand on the record and, therefore, the order became a final adjudication. Gradischnig v. Polk County, 164 N.W.2d 104, 105 (Iowa 1969); Hosfelt v. Lacey, 160 N.W.2d 519, 520 (Iowa 1968).

■ However, the "final adjudication" referred to in this statement construing the rule has reference to a final adjudicaton in the trial court, not in the appellate court. In Goldstein v. Brandmeyer, 243 Iowa 679, 684–685, 53 N.W.2d 268, 271, this court said:

"The question early arose as to whether the words 'final adjudication in the trial court' as used in Rule 86 meant the same as 'final judgment and decision' in Rule 331 which provided for appeals from 'all final judgments and decisions'. To clarify this situation in 1945 Rule 331 was amended and there was added * * * the further words 'and any final adjudication in the trial court under rule 86 *involving the merits or materially affecting the final decision*'.

"The adding of these words made reasonably clear that all 'final adjudications in the trial court' (referred to in Rule 86) were not intended to be appealable, but only those 'involving the merits or materially affecting the result.'

"Rule 86 does not relate to appellate but only to trial procedure. When it provides 'on such election the ruling, shall be deemed a final adjudication in the trial court' that means the particular point or question is settled so far as the *trial court* is concerned. It cannot be again raised there although the case remains open for the trial of any issues 'which remain undisposed of by such ruling and election.'

"If the ruling be one to strike certain allegations of a pleading leaving other allegations to be tried, clearly the 'final adjudication' does not dispose of the entire case in the trial court and the ruling is therefore interlocutory." (Emphasis in the original.)

We wish to emphasize that all "final adjudications in the trial court" under rule 86 are not intended to be appealable under rule 331.

Plaintiffs maintain the general policy against piecemeal appeals supported by the quote from the A.L.R. annotation in Reuter and relied on by the City does not apply to the pleadings as formed here.

■ · The rule that a judgment to be final must dispose of· the entire case does not apply where several distinct causes of action are united in the same suit. See 4 Am.

Jur.2d, Appeal and Error, section 53 and authorities cited in support of the text.

▆ Separate and distinct causes of action must be such as are both separable from each other and separable by some distinct line of demarcation. As tending to support this principle see Veits v. City of Hartford, 134 Conn. 428, 438, 58 A.2d 389, 394.

The editors in a footnote to 4 Am.Jur.2d, Appeal and Error, section 106, paraphrase an applicable statement from Attorney General of Utah v. Pomeroy, 93 Utah 426, 462, 73 P.2d 1277, 1294, 114 A.L.R. 726–727 in this manner:

"In order to be severable, and therefore appealable, any determination of the issues settled by the judgment of dismissal must not affect the determination of the remaining issues, whether the judgment on appeal is reversed or affirmed, and the determination of the remaining issues must not affect the final determination of the issues between the plaintiffs and the dismissed defendants. It is not necessarily the identity of the defendants' interests which controls, but whether the determination of the issues as to any defendant depends on or affects the determination of the issues as to the other defendants. If the claimed basis of liability of the dismissed defendants is connected with, or so related to, the claimed basis of liability of the remaining defendants that one may affect the other, a judgment as to the discharged defendants is not appealable until the issues as to the remaining defendants are settled."

The same principle is stated in these words in 4 C.J.S. Appeal and Error § 104b:

"Where the interests of the defendants are severable, a judgment or decree dismissing one or more of the several parties is a final judgment as to them. Whether a judgment of dismissal as to one or more of several parties is a severable and final judgment may depend on the theory which the court adopts. If the claimed basis of liability of the dismissed defendants is so

connected with, or related to, the claimed basis of liability of the remaining defendants that one may affect the other, a judgment as to the discharged defendants is ordinarily not appealable until the issues as to the remaining defendants are settled; where the liability of one defendant is not dependent on, or intertwined with, that of another, a decree dismissing the bill as against him is a final decree determinative of the separable controversy between him and plaintiff."

Attorney General of Utah v. Pomeroy, supra, is cited as support for the above statement from the text. Other cases citing the Pomeroy decision appear in the footnote. A glance at the citator will disclose the great number of times Pomeroy has been cited with approval.

Although the pleadings in Reuter v. City of Oskaloosa, 253 Iowa 768, 113 N.W.2d 716, presented a case for application of the general rule proscribing piecemeal appeals, we fail to find where this court has previously considered the precise question raised by the pleadings in the case before us.

Mrs. McGuire plead distinct and severable causes of action in each division of the petition. It is true the allegations of fact as to the way in which the accident happened are substantially the same in all four divisions, but separate causes of action for which separate suits may be maintained may arise out of the same act, occurrence, transaction or contract. The cause of injury upon which the right of action is found is not the cause of action itself, but only one element thereof. See Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069, 1072.

Plantiffs' allegations in divisions 1 and 2 may fairly be interpreted as asserting against Cedar Rapids causes of action based on the claim the City was negligent in connection with its operation of the plant. In divisions 3 and 4, plaintiffs' right to recover is based on the contention

Dory was negligent in failing to provide a reasonably safe place to work for its employees and the employees of Green Engineering Company. The claimed basis of liability asserted against Cedar Rapids is not dependent on or intertwined with the claimed basis of liability asserted against Dory Builders. Of course, the injury suffered by Mrs. McGuire was in different capacities.

No claim of joint liability on the part of the City and Dory Builders is asserted as a theory of recovery in any cause. The trier of fact could have found liability on those divisions directed against one defendant without a finding of liability against the other defendant on the causes asserted against it.

The order dismissing Cedar Rapids is a final determination of the separable controversy between plaintiffs and the City, a determination which does not affect the issues between plaintiffs and Dory Builders.

■ Plaintiffs have united in one petition as thus analyzed four separate and distinct causes of action which are both separable from each other and separable by a distinct line of demarcation. In the light of the pronouncement in Attorney General of Utah v. Pomeroy which is repeated in the quotation set out, supra, from Am.Jur.2d and C.J.S., we hold the order dismissing divisions 1 and 2 is a final adjudication under rule 86, R.C.P. involving the merits of plaintiffs' claim against Cedar Rapids and is appealable under rule 331, R.C.P.

The City's motion to dismiss the appeal is overruled.

II. Plaintiffs in seeking reversal contend "the court erred in sustaining the motion to dismiss on the grounds of governmental immunity" since the City was not protected by this doctrine in connection with the operation and remodeling of its sewage disposal plant.

The trial court relied on Walker v. City of Cedar Rapids, 251 Iowa 1032, 103 N.W.2d 727 and Elledge v. City of Des Moines, 259 Iowa 284, 144 N.W.2d 283, in sustaining the motion to dismiss.

In Walker a workman for the contractor in the construction of a sewer system in a section of Cedar Rapids sued the city for damages for injuries received when the sides of a ditch in which he was working caved in and he was buried in ten feet of dirt that had been piled on top. Defendant moved to strike certain paragraphs of the division of the petition in which plaintiff had alleged specific negligence against the city and a paragraph of another division in which plaintiff had relied on res ipsa loquitur. The trial court sustained the motion.

The primary question on appeal was whether the city was entitled to governmental immunity. The opinion, although making reference to Florey v. City of Burlington, 247 Iowa 316, 73 N.W.2d 770 and Hall v. Town of Keota, 248 Iowa 131, 79 N.W.2d 784, differentiated these opinions in saying the specific statutory provision applicable in the two cited cases supersede any theory of governmental immunity.

Section 389.12, The Code, is the statute referred to. It follows:

"Duty to supervise. They shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances."

In affirming the trial court's ruling, the opinion continues, 251 Iowa at 1038–1039, 103 N.W.2d at 731:

"We have no similar specific statutory liability of cities and towns with reference to sewer projects * * *.

"The weight of authority is that a city or town is entitled to governmental immunity as to installation of sanitary sewers."

The court held that because there was no statutory provision such as in section 389.12, governmental immunity would apply to sewer projects. In reaching this conclusion the court did not apply the theory developed in Florey. It might well have considered the statement that "this section does no more than emphasize and clarify a duty which would have existed without it" from Hall v. Town of Keota, 248 Iowa at 140, 79 N.W.2d at 789, made in commenting on the effect of section 389.12.

In Elledge v. City of Des Moines, the other case relied on by the trial court, plaintiff brought action against the city for damages resulting from flooding the basement of her home caused by the alleged obstruction of the city storm sewer. Defendant in answer admitted certain preliminary matters and asserted the affirmative defense of governmental immunity. Trial was to the court which denied defendant's claim of immunity and found the city had been negligent in failing to properly maintain its sewer system and awarded plaintiff damages.

In the case before us the court quotes this statement from the Elledge opinion appearing in 259 Iowa at 287, 144 N.W.2d at 285:

"We stand with those authorities which hold a municipality in adoption of plans for and in the construction or installation of drains and sewers, acts in a quasi judicial or legislative capacity, and at that stage ordinarily enjoys the benefits of governmental immunity. * * * [citing authorities]."

Following the above statement the court continued:

"But plaintiff's claim is not predicated upon any theory of fault in engineering or installation. She contends defendant city, after construction, forgot or abandoned the storm sewer in the area of her home, as a result of which it became so blocked or obstructed as to cause an accumulation of excess water in the street which overflowed the curb onto her property causing the subject damage."

After noting that cities and towns are not required to provide sewers and drains, the court said:

"But when a storm sewer is installed by a city or town, it becomes the property of the municipality. Its care, maintenance and continuance devolves wholly upon the city. No one can interfere with it. The primary purpose of the system is to provide surface drainage, any connection with sanitary undertakings of the city being only incidental. * * * [citing authorities].

"In 11 McQuillin, Municipal Corporations, Third Ed. Revised, section 31.33, page 260, we find the following authoritative statement: 'While as stated a grant of power to a municipal corporation to construct sewers and drains does not require it to do so, yet if it does exercise the power conferred, it is bound to use ordinary care or exercise due diligence to keep such sewers and drains as it constructs in proper condition and repair and free from obstructions, and will be held liable for damages to property resulting from its failure to do so, * * *.' * * * [citing authorities]."

In view of the court's explanation in the foregoing quotation of plaintiff's theory of recovery, it seems the statements of principle that follow in the opinion are more favorable to Mrs. McGuire's position than as support for the court's ruling.

Although not required to do so, cities and towns have power to provide sewage disposal plants. Section 368.26(2), The Code. Where the municipality exercises the power conferred, supervision and control of the operation and maintenance of such disposal system is delegated by the legislature to the municipality. Section 394.3, The Code. We set out the pertinent part of this section:

"Supervision and control. The construction, acquisition, improvement, equipment,

custody, operation, and maintenance of any such works for the collection, treatment, or disposal of sewage, * * * and the collection of revenues therefrom, for the service rendered thereby, shall be under the supervision and control of the city. * * *."

 This is a statutory delegation of power which, where exercised by the municipality, carries with it a duty to use ordinary care or exercise due diligence to maintain and operate such disposal system in a safe manner. Failure to perform the duty arising from this delegated power imposes liability upon the municipality for injuries to one lawfully coming upon the premises who is injured because of such failure and without fault on his part without any statute expressly authorizing a cause of action. In support see Florey v. City of Burlington, 247 Iowa 316, 321–322, 73 N.W.2d 770, 772–773; Hall v. Town of Keota, 248 Iowa 131, 136–137, 79 N.W.2d 784, 786–787; Lindstrom v. City of Mason City, 256 Iowa 83, 90, 126 N.W.2d 292, 296.

The governing principle which has emerged from the cases cited "had an early inception" in Soper v. Henry County, 26 Iowa 264, 268, where this court said:

"Thus, incorporated cities and towns, wherever they are invested by their organic or constituent acts with general supervision and control over their streets, with power to grade and to improve them, and with the power to levy taxes or raise revenue, which may be used for the purposes of such repair, are held liable, *without any statute expressly giving the action, for injuries caused by unsafe and defective streets.*" (Emphasis supplied.)

It was thoroughly discussed and adhered to in Bauman v. City of Waverly, 164 N.W.2d 840, 847–848 (Iowa 1969) which has this statement from Florey v. City of Burlington, 247 Iowa at 319–320, 73 N.W. 2d at 772:

"The municipal corporation is not liable for negligent acts of its employees engaged in performing governmental functions. But it is liable, as is a private corporation, for their negligence in performing proprietary duties; and it is not immune from liability for damage due to dangerous conditions resulting from its own misfeasance or non-feasance in governmental matters."

In Hall v. Town of Keota, 248 Iowa at 136–137, 79 N.W.2d at 787, this court in relying on Florey said:

"* * * The reasoning of the Florey case is that if a failure to perform the statutory duty imposed by section 389.12 results in injury to one lawfully using the service offered by the municipality, liability results, notwithstanding that the function involved is a purely governmental one. * * *.

"* * * Its holding is that a failure of a city or town to keep its streets, or parks, 'in repair and free from nuisances' destroys the governmental immunity of the municipality and renders it liable to respond in damages if a user is injured because of such failure and without fault on his part."

 In Bauman we commented on the fact the principle of municipal liability for tort announced in Soper v. Henry County, although liability there arose from delegation of power and failure to maintain highways and public premises in a safe condition for public use, had been applied with equal logic in the case of public parks in Florey v. City of Burlington, supra. We then added that the principle of liability also applied to a public restroom established under statutory authority. We now add municipal liability also arises "with equal logic" from a city or town's operation and maintenance of a sewage disposal plant established under authority of our statute.

Returning to Bauman, 164 N.W.2d at 847, after citing the cases considered, su-

pra, in this opinion and Gorman v. Adams, 259 Iowa 75, 143 N.W.2d 648, we declare:

"These opinions make it clear the city's duty arises because authority and control over a particular activity have been delegated to it."

■ We are satisfied from the allegations in divisions 1 and 2 of the petition plaintiffs express a theory of recovery based on the City's liability for the negligent exercise of this delegated power in that "a dangerous concentration of poisonous gases was allowed to accumulate in the dry well in the pumping station causing injury to Patrick McGuire."

The facts alleged, if true, would constitute a sufficient basis to sustain a finding that governmental immunity does not shield the City from liability in this case. Gorman v. Adams, 259 Iowa at 81, 143 N.W.2d at 651.

■ Liability is not predicated upon the doctrine of respondeat superior, but upon the municipality's own negligence in failing to operate and maintain its sewage disposal plant in a reasonably safe manner.

The City's contention otherwise is without merit. See Florey v. City of Burlington, 247 Iowa at 323, 73 N.W.2d at 773 and Mardis v. City of Des Moines, 240 Iowa 105, 34 N.W.2d 620.

The City's argument that Bauman v. City of Waverly, supra, is distinguished from the case before us since no construction or installation was involved in Bauman is not persuasive.

Plaintiffs do not deny there was work in progress at the plant on the date of the accident and have so plead in their petition. We have determined that the divisions directed to the city express a theory of recovery based on the City's liability for the negligent exercise of a delegated power and not one based on a theory of negligence arising from construction or installation.

We point out what must be obvious— the accident involved happened before the effective date of chapter 613A, The Code.

With directions to reinstate plaintiffs' petition and proceed in the matter in accordance with the Rules of Civil Procedure, the case is therefore

Reversed and remanded.

All Justices concur except REYNOLD-SON, J., who takes no part.