# IN THE COURT OF APPEALS OF IOWA

No. 20-1432
Filed January 12, 2022

**PAUL YAKEL and THERESE YAKEL,**
Plaintiffs-Appellants,

**vs.**

**RANDALL W. WHEELER, individually,**
Defendant-Appellee,

and

**LIGHTWINE CONSTRUCTION, INC., and CARSON STONE & SUPPLY, LLC,**
Defendants.
_____

Appeal from the Iowa District Court for Pottawattamie County, James S. Heckerman, Judge.

Paul and Therese Yakel appeal the district court's grant of a defendant's motion for summary judgment. **APPEAL DISMISSED.**

Sean A. Minahan of Lamson Dugan & Murray, LLP, Omaha, for appellants.

Brody D. Swanson of Peters Law Firm, P.C., Council Bluffs, for appellee.

Jack Ruesch of Telpner Peterson Law Firm, Council Bluffs, for defendant Lightwine Construction, Inc.

Gregory G. Barntsen of Smith Peterson Law Firm, LLP, Council Bluffs, for defendant Carson Stone & Supply, LLC.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**VAITHESWARAN, Judge.**

Paul and Therese Yakel filed an amended petition against Lightwine Construction, Inc. (Lightwine), Carson Stone & Supply, LLC (Carson Stone), and Randall W. Wheeler alleging (1) they "obtained bids from several contractors to tear off and install new siding on their home"; (2) they "obtained a proposal from Defendant Lightwine for the labor to remove the original siding and installation of new siding on [their] home"; (3) Wheeler "directed [] Lightwine and other subcontractors during the project"; and (4) they later discovered the "siding was warping and pulling away from the home" and "was not installed pursuant to the instructions provided by the siding manufacturer." They raised breach-of-contract, negligent-construction, and breach-of-implied-warranty claims against Lightwine and Wheeler and respondeat superior/vicarious liability and negligence claims against Carson Stone.

Wheeler moved for summary judgment. The district court granted the motion "as to all claims made against Wheeler by the Yakels." The Yakels appealed.

The supreme court, on its own motion, raised a jurisdictional issue premised on the dismissal of claims against only one of the three defendants. The court stated, "[T]he order granting [Wheeler's] motion for partial summary judgment may be interlocutory" because

> [i]f the claimed basis of liability of the dismissed defendants is connected with, or so related to, the claimed basis of liability of the remaining defendants that one may affect the other, a judgment as to the discharged defendants is not appealable until the issues as to the remaining defendants are settled.

(quoting *McGuire v. City of Cedar Rapids*, 189 N.W.2d 592, 597 (Iowa 1971)). The court required this court to address the jurisdictional issue. We begin and end there.

"A party may appeal as of right only from a final order or judgment; a party seeking to appeal an interlocutory order must obtain permission of the appellate court." *Mason City Prod. Credit Ass'n v. Van Duzer*, 376 N.W.2d 882, 884–85 (Iowa 1985); *see also* Iowa R. App. P. 6.103. "Whether a complete dismissal of one defendant in a multi-defendant action is final for purposes of appeal turns on the question of whether the interest of the dismissed defendant is severable from the claims against the [remaining] defendants." *Buechel v. Five Star Quality Care, Inc.*, 745 N.W.2d 732, 735 (Iowa 2008). "Separate and distinct causes of action must be such as are both separable from each other and separable by some distinct line of demarcation." *McGuire*, 189 N.W.2d at 597.

> In order to be severable, and therefore appealable, any determination of the issues settled by the judgment of dismissal must not affect the determination of the remaining issues, whether the judgment on appeal is reversed or affirmed, and the determination of the remaining issues must not affect the final determination of the issues between the plaintiffs and the dismissed defendants. It is not necessarily the identity of the defendants' interests which controls, but whether the determination of the issues as to any defendant depends on or affects the determination of the issues as to the other defendants. If the claimed basis of liability of the dismissed defendants is connected with, or so related to, the claimed basis of liability of the remaining defendants that one may affect the other, a judgment as to the discharged defendants is not appealable until the issues as to the remaining defendants are settled.

*Id.* (quoting *Att'y Gen. of Utah v. Pomeroy*, 73 P.2d 1277, 1294 (Utah 1937)).

The requirement that claims be severable along a distinct line of demarcation aligns with "the general policy against piecemeal appeals." *Id.* at 596.

That is particularly true in the civil context, where "the policy favoring avoidance of piecemeal appeals" outweighs the need for prompt disposition of cases. *Shoemaker v. City of Muscatine*, 275 N.W.2d 206, 208–09 (Iowa 1979); *see also Stockton Realty Co. v. Muscatine Cnty. Solid Waste Mgmt. Agency*, No. 03–1331, 2004 WL 1902518, at *3 (Iowa Ct. App. Aug. 26, 2004).

We first consider the Yakels' "respondeat superior/vicarious liability" and negligence claims against Carson Stone. "Translated from Latin, respondeat superior means 'let the principal answer.'" *Teebo v. Johnson*, No. 17-1683, 2018 WL 2084845, at *1 (Iowa Ct. App. May 2, 2018). "[U]nder the doctrine of respondeat superior, an employer is liable for the negligence of an employee committed while the employee is acting within the scope of his or her employment." *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999) (citations omitted). "Vicarious liability is broadly defined as liability a person bears for the actionable conduct of another person because of a relationship between the two parties." *Jones v. Glenwood Golf Corp.*, 956 N.W.2d 138, 143 (Iowa 2021) (citation omitted). "Vicarious liability is commonly used in cases involving respondeat superior, principals and agents, employers and employees, or other similar relationships." *Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 762 N.W.2d 463, 471 (Iowa 2009). "[A] claim of vicarious liability under the doctrine of respondeat superior rests on two elements: proof of an employer/employee relationship, and proof that the injury occurred within the scope of that employment." *Godar*, 588 N.W.2d at 705 (citation omitted).

The Yakels alleged (1) Wheeler "was acting within the scope and course of his employment with [] Carson Stone when he contracted with" them; (2) Carson

Stone was "vicariously liable for the negligent acts of [] Wheeler, its employee, under the doctrine of respondeat superior"; (3) Wheeler, "while in the course and scope of his employment with [] Carson Stone, was negligent in providing contractor services to" them; (4) Wheeler "was instructed by [] Carson Stone to provide designs and to use [] Carson Stone's materials in the designs"; and (5) "Carson Stone breached [its] duty of care in failing to properly train, supervise, and instruct [] Wheeler over the course of the project."

There is no question "determination of the issue[] settled by the . . . dismissal" would "affect the determination of" the respondeat superior/vicarious liability and negligence claims against Carson Stone. *See McGuire*, 189 N.W.2d at 597.

We turn to the breach-of-contract, negligent-construction, and breach-of-implied-warranty claims against Lightwine. The Yakels alleged (1) "Wheeler acting within his scope of employment with [] Carson Stone, obtained a proposal from [] Lightwine for the labor to remove the original siding and installation of new siding on [their] home"; (2) "Lightwine represented to [] Wheeler that it was qualified to install [] the type of siding purchased by" them; (3) "Wheeler relayed [] Lightwine's representations to" them; (4) Wheeler "failed to ask [] Lightwine whether it had installed real wood siding before"; (5) Wheeler "failed to provide [] Lightwine with the manufacturer instructions from the siding manufacturer"; and (6) "Wheeler acting within [his] scope of employment with [] Carson Stone directed [] Lightwine and other subcontractors during the project." They claimed Lightwine "breached the contract by failing to properly install the siding in a workmanlike manner."

The contract claim against Lightwine is inextricably entwined with the claims against Wheeler and Carson Stone. *See Lerdall Const. Co. v. City of Ossian*, 318 N.W.2d 172, 175–76 n.2 (Iowa 1982) (stating, "A determination of the contract's legality in the trial against the city will plainly affect plaintiff's case against the individual defendants" and, "In the case at bar, we find no claim asserted against the individual defendants which does not affect or will not be affected by a determination of the issues involved in the claims against the city. Therefore, this appeal . . . is not appealable as a matter of right"), *holding modified on other grounds by Banco Mortg. Co. v. Steil*, 351 N.W.2d 784 (Iowa 1984). Resolution of the terms and scope of the contract as the Yakels request requires consideration of Wheeler's role relative to the other defendants.

The negligent-construction claim against Lightwine incorporated the same allegations underlying the breach-of-contract claim, including the allegation that Wheeler, acting within the scope of his employment with Carson Stone directed the activities of the subcontractors. The Yakels claimed Lightwine breached a duty of care "in failing to properly install the siding pursuant to the manufacturer's instructions and in failing to use the degree of care, skill, and knowledge ordinarily exercised by contractors in the installation of siding on a home." The claim could not be decided without determining Wheeler's role.

The breach-of-implied-warranty claim against Lightwine was similarly intertwined with Wheeler's claim. The Yakels incorporated the previous allegations by reference and claimed, "Lightwine, in its removal and installation of siding on the home, impliedly warranted that the work performed would be performed in a workmanlike manner, that the work was fit for the purpose it was intended, and

would be of good quality or free from defects." They alleged, "Wheeler in the course of providing contractor services to [them], impliedly warranted that the work performed by him and his subcontractors would be performed in a workmanlike manner, that the work was fit for the purpose it was intended, and would be of good quality or free from defect."

Because "the issues resolved by partial summary judgment[] are inextricably entwined with unresolved issues," the district court's grant of summary judgment in favor of Wheeler is not final and ripe for appeal as a matter of right. *See Van Duzer*, 376 N.W.2d at 885.

We must next decide whether to treat the appeal as an application for interlocutory appeal. *See Buechel*, 745 N.W.2d at 735; Iowa R. App. P. 6.104(2). The supreme court "has traditionally been parsimonious about allowing interlocutory appeals." *Van Duzer*, 376 N.W.2d at 886. The court has "emphasized the disadvantages of piecemeal appeals and cautioned that we view with disfavor applications for permission to appeal." *Id.* "The main factor in determining whether such an interlocutory appeal should be granted is whether consideration of the issues would serve the interest of sound and efficient judicial administration." *Buechel*, 745 N.W.2d at 735–36.

We are hard-pressed to discern how the grant of an application for interlocutory appeal would serve the interests of sound and efficient judicial administration. Each of the claims raises questions of fact or law that intersect with claims that are currently before the district court. The interests of efficiency

and avoidance of piecemeal litigation dictate consideration of issues involving all three defendants in a single appeal.

**APPEAL DISMISSED**.