**IN THE COURT OF APPEALS OF IOWA**

No. 21-1430
Filed February 22, 2023

**HAUSMANN CONSTRUCTION, INC.,**
    Plaintiff-Appellant,

**vs.**

**NATIONWIDE MUTUAL INSURANCE COMPANY, f/k/a ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,**
    Defendant-Appellee,

_____

    Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski, Judge.

    Plaintiff appeals the district court's grant of summary judgment to an insurance company on the plaintiff's breach-of-contract claim. **AFFIRMED.**

    Tiffany S. Boutcher and Brenda K. Smith of Dvorak Law Group, LLC, Omaha, Nebraska, for appellant.

    Joseph D. Thornton of Smith Peterson Law Firm, LLP, Council Bluffs, for appellee.

    Heard by Bower, C.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

Hausmann Construction, Inc. (Hausmann) appeals the district court's grant of summary judgment to Nationwide Mutual Insurance Company (Nationwide) on Hausmann's breach-of-contract claim.

## I.     Background Facts & Proceedings

In 2017, Iowa Western Community College entered into a contract with Hausmann for the construction of a new wellness facility on the college's campus. The contract provided Hausmann would be responsible for property damage arising during the construction process.

Hausmann entered into a subcontract with Advanced Trenching & Utilities, LLC, (Advanced Trenching) for utility and excavation work on the project. The subcontractor agreement provided that Advanced Trenching would be responsible for property damage arising from its work. Additionally, Advanced Trenching was required to include Hausmann as an additional insured under its insurance policy, which it did.

Advanced Trenching entered into a subcontract with Torco Enterprises, Inc. (Torco). Torco's employee struck a water main while performing work on the project, rupturing the water main and causing flooding of the work site. Hausmann paid the costs and expenses for repairing the water main and replacing a damaged retaining wall.

Hausmann asked Advanced Trenching to submit a claim to Nationwide for the damages, but Advanced Trenching refused. Hausmann then submitted a claim for $199,509.54 to Nationwide, claiming it was covered by Advanced Trenching's

policy with Nationwide as an additional insured. Nationwide did not respond to Hausmann's claim.

Hausmann filed suit against Nationwide, claiming there was a breach of contract.[1] Hausmann asserted:

> Nationwide breached the insurance contract by failing to reimburse Hausmann, as an additional named insured and as an explicit and intended beneficiary of the [p]olicy proceeds, for the costs and expenses incurred by Hausmann in repairing the damages caused by the [w]ater [m]ain [b]reak and by failing to timely provide coverage to Hausmann and pay the full [p]olicy proceeds to Hausmann for the damages caused as a result of the [w]ater [m]ain [b]reak.

Hausmann claimed it has sustained damages as a result of Nationwide's breach of the insurance contract.

Nationwide filed a motion for summary judgment. It argued that the lawsuit was a direct action against an insurer, which is prohibited by Iowa Code section 516.1 (2021). Nationwide pointed out that Hausmann had not obtained a judgment against Advanced Trenching or Torco and it would be premature to permit Hausmann to collect from Nationwide the costs and expenses of repairs due to the water main break. Nationwide also stated that although Hausmann was an additional insured, it "did not allege that Nationwide breached any duty to defend or indemnify Hausmann as an additional insured."

Hausmann resisted the motion for summary judgment. Hausmann argued it was suing Nationwide as an additional insured, not as a third party. Hausmann noted that under the insurance policy, Nationwide was obligated to "pay those

---

[1] Hausmann also raised tort, breach-of-contract, and breach-of-implied-warranty claims against Advanced Trenching and Torco. These claims are not part of the present appeal.

sums that the insured becomes legally obligated to pay as damages," and based on its contract with the college, Hausmann was legally obligated to pay for the damages from the water main break. Hausmann contended that under the terms of the insurance policy, Nationwide was required to indemnify Hausmann for these damages. Hausmann argued that damages it is legally obligated to pay include obligations arising from a contract.

Following a hearing, the district court granted Nationwide's motion for summary judgment. The court stated:

> Hausmann's breach of contract claim is not ripe because there has not been a claim submitted against Hausmann to trigger the [commercial general liability] policy; in coming to this conclusion, the court finds that term "legally obligated to pay as damages" is not ambiguous in the context of the whole policy and as such, cannot be read to require indemnification for expenses related to the water main break.

The court determined the phrase, "legally obligated to pay as damages" meant "sums resulting from legal action by a third party on the additional insured." The court noted the college did not make a claim against Hausmann and there were no damages proven against Hausmann by a third party in a lawsuit. The court also concluded Hausmann's claims against Nationwide were barred by Iowa Code section 516.1.

Hausmann appeals the district court's decision.

## II.    Standard of Review

We review a district court's decision granting summary judgment for the correction of errors of law. *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013). The Iowa Supreme Court has stated:

> A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the record reveals a conflict only concerns the legal consequences of undisputed facts. When reviewing a court's decision to grant summary judgment, we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact.

*Id.* at 139–40 (quoting *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96–97 (Iowa 2012)). The party seeking summary judgment has the burden to show there are no genuine issues of material fact and the party is entitled to a judgment as a matter of law. *Morris v. Steffes Grp., Inc.*, 924 N.W.2d 491, 496 (Iowa 2019).

## III.    Interlocutory Appeal

Nationwide claims Hausmann improperly filed a notice of appeal when the district court's order is not a final order, making this an improper interlocutory appeal. *See* Iowa R. App. P. 6.103(3) ("No interlocutory order may be appealed until after the final judgment or order is entered except as provided in rule 6.104."). Nationwide asserts that the district court's order did not finally adjudicate the matter of whether Nationwide was required to provide insurance coverage to Hausmann. Nationwide points out that the court stated, "Hausmann's breach of contract claim is not ripe because there has not been a claim submitted against Hausmann to trigger the [commercial general liability] policy." Hausmann responds that the district court's ruling was a final order on Hausmann's claims against Nationwide, so a direct appeal was proper.

Regarding summary judgment in a case involving multiple claims against multiple defendants, the supreme court has stated, "Whether a complete dismissal

of one defendant in a multi-defendant action is final for purposes of appeal turns on the question of whether the interest of the dismissed defendant is severable from the claims against other defendants." *Buechel v. Five Star Quality Care, Inc.*, 745 N.W.2d 732, 735 (Iowa 2008). Additionally, "when a judgment or order disposes of less than the entire case, it may still be deemed final for purposes of appeal if it completely disposes of one or more claims which are distinct and separable from the undecided claims." *Mason City Prod. Credit Ass'n v. Van Duzer*, 376 N.W.2d 882, 885 (Iowa 1985).

"Separate and distinct causes of action must be such as are both separable from each other and separable by some distinct line of demarcation." *McGuire v. City of Cedar Rapids*, 189 N.W.2d 592, 597 (Iowa 1971). Additionally,

> In order to be severable, and therefore appealable, any determination of the issues settled by the judgment of dismissal must not affect the determination of the remaining issues, whether the judgment on appeal is reversed or affirmed, and the determination of the remaining issues must not affect the final determination of the issues between the plaintiffs and the dismissed defendants.

*Id.* (citation omitted). This follows a general policy against piecemeal appeals. *See Yakel v. Wheeler*, No. 20-1432, 2022 WL 122353, at *2 (Iowa Ct. App. Jan. 12, 2022).

Hausmann's claims against Nationwide are distinct and severable from its claims against Advanced Trenching and Torco. Hausmann claimed Advanced Trenching and Torco were negligent in performing their work. Additionally, Hausmann claimed Advanced Trenching abandoned its work, failed to act in a good and workmanlike manner, breached the subcontract agreement, and breached implied warranties. Hausmann's claims against Advanced Trenching

and Torco arise from their work on the construction site for the wellness facility. Hausmann's claims against Nationwide arise from the terms of the insurance policy and are distinct and severable from the claims against Advanced Trenching and Torco.

The district court ruled:

> If Hausmann wants to seek remedy for its expenses in relation to the water main break, it still has the opportunity to prove recovery against [Advanced Trenching] or Torco since the incident itself lies in tort action. This would put Hausmann in the position that Nationwide presumed it would be in when, as the insurer of [Advanced Trenching], Nationwide sought to have the action dismissed as a violation of Iowa Code [section] 516.1. Because a third-party's direct action against an insurer is barred by this statute, Hausmann is effectively prevented from bringing claims against Nationwide at this time.

The court did not address whether exclusions in the insurance policy applied. The district court's ruling states, "Nationwide's motion for summary judgment is GRANTED. [Hausmann's] claim against Nationwide is dismissed from the current action."

Hausmann asserts that the district court's ruling means it could bring an action against Nationwide only after it obtained a judgment against Advanced Trenching and Torco for a satisfaction of judgment, and it is precluded from obtaining coverage as an additional named insured. It points out that under the summary judgment ruling Nationwide has been dismissed as a party from the lawsuit.

We find Hausmann has the better of the arguments on this issue. We conclude the district court's summary judgment ruling was a final appealable ruling in regard to Hausmann's claims against Nationwide, so we proceed to the merits.

## IV.    Iowa Code section 516.1

Nationwide asserts that Hausmann's claim against it is barred by Iowa Code section 516.1, which provides:

> All policies insuring the legal liability of the insured, issued in this state by any company, association or reciprocal exchange shall, notwithstanding any other provision of the statutes, contain a provision providing that, in event an execution on a judgment against the insured be returned unsatisfied in an action by a person who is injured or whose property is damaged, the judgment creditor shall have a right of action against the insurer to the same extent that such insured could have enforced the insured's claim against such insurer had such insured paid such judgment.

Nationwide maintains that Hausmann cannot assert a direct claim against Nationwide to recover on Hausmann's claim against Advanced Trenching or Torco.  Hausmann responds by contending its claim against Nationwide is a direct claim for coverage based on Hausmann's status as an additional insured under Advanced Trenching's policy with Nationwide, not to recover on its claim against Advanced Trenching.

To the extent Hausmann's claim against Nationwide is an attempt to circumvent its claims against Advanced Trenching as a tortfeasor and proceed directly against Advanced Trenching's insurance company instead, the district court correctly ruled that the claim is barred by section 516.1 until such time as Hausmann obtains a judgment against Advanced Trenching and the judgment remains unsatisfied.  *See O'Kelley v. Lochner*, 145 N.W.2d 626, 631 (Iowa 1966) ("The cause of action against the insurance carrier arises when a judgment against the insured remains unsatisfied after execution."); *see also Peak v. Adams*, 799 N.W.2d 535, 544–45 (Iowa 2011) (finding a plaintiff did not have a right to sue a tortfeasor's insurance company directly).  But to the extent Hausmann seeks

coverage under the policy as an additional insured under the policy, section 516.1 does not bar the action. So, we turn to Hausmann's direct claim.

## V.   Coverage Under the Policy

Hausmann has the initial burden of showing that its claim falls within the policy's coverage. *See Wakonda Club v. Selective Ins. Co. of Am.*, 973 N.W.2d 545, 549 (Iowa 2022). To determine whether Hausmann has coverage under the Nationwide policy, we start with the policy language. *See Just v. Farmers Auto. Ins. Ass'n*, 877 N.W.2d 467, 471 (Iowa 2016) (noting that courts determine the intent of the parties to an insurance contract by looking at what the policy says). The insuring agreement in this commercial general liability (CGL) policy states:

> We will pay those sums that the insured[2] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Hausmann claims that it was legally obligated to pay the amount it did to fix the damages caused by the water main break. Nationwide counters that no one asserted any claims against Hausmann, so Hausmann's voluntary decision to pay for the repairs does not make the payment a sum that Hausmann was legally obligated to pay as damages.

---

2 While not found in the definitions section of the policy, the coverage form of the policy states that "insured" means any person or organization qualifying as such under "Section II—Who Is An Insured." There is no dispute that Hausmann is an insured because the endorsement adding Hausmann to the policy expressly states that "Section II—Who Is An Insured" is amended to include Hausmann as an additional insured.

Based on the arguments of the parties, the case hinges on what "becomes legally obligated to pay as damages" means. Hausmann claims this language is ambiguous, so it must be construed in its favor. *See Wakonda Club*, 973 N.W.2d at 549. Nationwide claims there is no ambiguity, as the policy language makes clear that some type of claim must be made against an insured before coverage is triggered. We have little authority in Iowa on this topic, so we look to other jurisdictions for help.[3]

We find a relatively recent federal case from Virginia instructive on the issue at hand. In *Electric Motor Work & Contracting Company, Inc. v. Travelers Indemnity Company of America*, the federal court was faced with a strikingly similar factual scenario. 235 F. Supp. 3d 781 (E.D. Va. 2017). Electric Motor contracted

---

[3] We are aware of *Red Giant Oil Co. v. Lawlor*, a case upon which Hausmann relies heavily. 528 N.W.2d 524 (Iowa 1995). In *Red Giant*, the court found the phrase "legally obligated to pay" to be ambiguous. *Id.* at 533. We find *Red Giant* distinguishable for a number of reasons. First, although the policy language at issue was identical (i.e., the insuring agreement included the phrase "legally obligated to pay as damages"), the court found only the "legally obligated to pay" language ambiguous, giving no explanation for why it did not address the modifying language of "as damages." Perhaps neither party made an argument about the modifying language. For reasons we will discuss later, the modifying language "as damages" matters. Second, the situation in *Red Giant* differed significantly from the situation here in that a claim was made against the insured, the insurer refused to defend the insured, and the insured reached a settlement with the party making a claim against it after the insurer's refusal to defend. *Id.* at 527. It was in this context that the court found the phrase "legally obligated to pay" ambiguous. In contrast, no one asserted a claim against Hausmann, and Nationwide was never given the opportunity to defend Hausmann before Hausmann incurred the expenses for which it now seeks coverage. So, while the *Red Giant* court found part of the policy language ambiguous within the context of the issue at hand in that case, we are evaluating the meaning of that language in a different context. We determine whether policy language is ambiguous "in the context of the policy as a whole." *Nat'l Sur. Corp. v. Westlake Inv., LLC*, 880 N.W.2d 724, 734 (Iowa 2016). Given the different context involved here, we do not find *Red Giant* dispositive on the issue of ambiguity.

with the United States Navy to repair generators used on Navy ships. *Id.* at 785. Its invoices for the repair work included limited warranties. *Id.* One of Electric Motor's subcontractors did the work on a generator that failed. *Id.* Electric Motor determined that its subcontractor's poor workmanship caused damage to the generator's rotors. *Id.* at 786. Feeling immense pressure from the Navy to fix the problem, Electric Motor incurred the costs for repairing the generator and then sought coverage for those costs under its CGL policy. *Id.* Facing the same argument as presented here over the meaning of the policy language "legally obligated to pay as damages," the court stated:

> At the outset, the court notes that the ordinary meaning of the phrase "legally obligated to pay" is broad and likely encompasses any duty under the law to pay money. However, this phrase must be construed in light of the adjoining clause "as damages." In fact, the court must presume that the clause "as damages" lends specific meaning to the phrase and thus narrows its otherwise broad scope.
>
> In common usage, the plural noun "damages" has a specific meaning in a legal context, such as here, where a "legal obligation" is involved. The Oxford English Dictionary defines "damages," when used in "law," as "[t]he value, estimated in money, of something lost or withheld; the sum of money claimed or adjudged to be paid in compensation for loss or injury sustained." Similarly, Black's Law Dictionary defines the term as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." Therefore, paying a sum as "damages" pursuant to a legal obligation is not equivalent to paying any sum that is legally owed or legally required to be paid. Rather, "damages" has a more specific meaning, indicating a sum that is claimed by another, or ordered to be paid, as remediation for something lost or as compensation for injury.
>
> For this reason, the court does not find the phrase "legally obligated to pay as damages" in the CGL policy to be ambiguous, as Electric Motor claims. Rather, this court adopts the plain meaning of the phrase, which is that an insured becomes "legally obligated to pay [a sum] as damages" when some claim, order, or adjudication has directed the insured to pay a sum, pursuant to a binding legal obligation, as compensation or remediation for a loss or injury.

*Id.* at 788–89 (alterations in original) (internal citations omitted). The court went on to note that, while it declined to find that an insured only becomes "legally obligated to pay [sums] as damages" when there has been a final judgment or settlement of a lawsuit, there must be "other coercive legal obligation" to pay. *Id.* at 789–90 (alteration in original). A contractual duty to incur the repair costs "without more, is not sufficient to bring the repair costs within the scope of the CGL policy's insuring agreement." *Id.* at 790. In order to have coverage under the policy, Electric Motor was required to have "some claim, order, or adjudication" requiring it to pay. *Id.* at 790–91. Concluding that Electric Motor chose to incur the repair costs "absent any claim, demand or other communication by the Navy directing Electric Motor to pay such sums, and certainly absent any lawsuit or other proceeding," Electric Motor had no coverage under the CGL policy. *Id.* at 791.

We find this reasoning persuasive and apply it here. Like the *Electric Motor* court, we find no ambiguity in the policy's language providing coverage for sums Hausmann became "legally obligated to pay as damages" in this context.[4] No one demanded Hausmann pay the costs of repairing the damage from the water main break, and there was no claim, order, or adjudication requiring them to do so. As such, there was no coercive legal obligation for Hausmann to pay.[5] *See id.* at 789–90.

---

[4] We note that the duties section of the policy also includes language that directs that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." This policy language contributes to our finding that there is no ambiguity in the "legally obligated to pay as damages" language, as the two clauses work in tandem not to provide coverage for voluntary payments.

[5] On this point, we also note the policy language quoted above that gives Nationwide the right to defend any suit seeking damages. As no suit was ever

For the foregoing reasons, we conclude there is no coverage for the repair costs Hausmann incurred and the district court got it right in granting summary judgment on this basis. We note that other courts have reached similar conclusions. *See*, *e.g.*, *Permasteelisa CS Corp., v. Columbia Cas. Co.*, 377 F. App'x 260, 264–67 (3rd Cir. 2010) (applying New Jersey law to conclude "legally obligated to pay" does not include remediation work done by a subcontractor to fulfill its contractual obligation); *Cincinnati Ins. Co. v. Crossman Cmtys. P'ship*, No. 05-470-KSF, 2008 WL 852133, at *3–5 (E.D. Ky. 2008) (applying Indiana law and holding CGL policy covering amounts a contractor was "legally obligated to pay as damages" did not cover costs of repairing construction defects when no suits were filed or reduced to judgment); *Detroit Water Team Joint Venture v. Agric. Ins. Co.,* 371 F.3d 336, 339–41 (6th Cir. 2004) (applying Michigan law and concluding that costs the insured contractor incurred to fix damages caused by a negligent subcontractor were not amounts the contractor was "legally obligated to pay," so there was no CGL coverage); *Stanford Trading Co. v. Nationwide Mut. Ins. Co.*, No. 99-11220, 2000 WL 1701741, at *1–2 (5th Cir. 2000) (applying Texas law and concluding "legally obligated to pay as damages" means the insured is required to pay a third party by a settlement or judgment in a filed suit); *Nationwide Mut. Ins. Co. v. Reg'l Elec. Contractors, Inc.*, 680 A.2d 547, 550–51(Md. Ct. Spec.

---

brought against Hausmann, and Hausmann incurred the costs it seeks to recover as damages before notifying Nationwide, Nationwide was deprived of its right to defend against a claim for damages. This further contributes to the conclusion that there is no coverage for Hausmann's voluntarily incurred costs.

App. 1996) (applying Maryland law and concluding costs of voluntary repairs made by an insured were not amounts the insured became "legally obligated to pay").[6]

Because there is no coverage afforded to Hausmann under the insuring agreement of the policy, it is not necessary for us to address whether there are exclusions that would apply to negate coverage. As the district court properly granted summary judgment in favor of Nationwide, we affirm.

**AFFIRMED.**

---

[6] We recognize that other courts have reached the opposite conclusion. Hausmann relies on two of those cases, *Big-D Construction Corp. v. Take It for Granite*, 917 F. Supp. 2d 1096 (D. Nev. 2013), and *Desert Mountain Properties Ltd. Partnership v. Liberty Mutual Fire Insurance Co.*, 236 P.3d 421 (Ariz. Ct. App. 2010). The *Electric Motor* court was aware of both of these cases but found them unpersuasive because they "depart from the plain meaning of the phrase 'legally obligated to pay as damages.'" *Elec. Motor*, 235 F.Supp.3d at 790 n.6. We agree with the *Electric Motor* court's reasoning and likewise find these two cases relied upon by Hausmann unpersuasive.